**MILLCREEK ASSOCIATES, L.P., Plaintiff,**

v.

**BEAR, STEARNS & CO., Lisbeth R. Barron, Scott J. Hyten, Wild Brain, Inc., Jeffery Ulin, individually and as CEO of Wild Brain, Inc., John Hays, Jeff Fino, Phil Robinson, Robin Steele, and David Marshall, Defendants.**

**No. A:01CV822.**

United States District Court, W.D. Texas, Austin Division.

May 14, 2002.

Charles A. Watson, Collins & Watson, Houston, Wayne D. Collins, Collins and Watson, Houston, for Millcreek Associates, L.P., plaintiffs.

Gerard G. Pecht, Fulbright & Jaworski, Houston, Mark T. Mitchell, Clark, Thomas, & Winters, Duffy Keever, Clark Thomas & Winter, Austin, for Bear, Stearns & Co., Inc., Lisbeth R. Barron, Scott J. Hyten, Wild Brain, Inc., Jeffery Ulin, individually and as CEO of Wild Brain, Inc., John R. Hays, Jr., Jeff Fino, Phil Robinson, Robin Steele, David Marshall, defendants.

## ORDER

NOWLIN, District Judge.

Before the Court is the above entitled cause of action. This cause was referred to a United States Magistrate Judge for findings and recommendations pursuant to 28 U.S.C. § 636(b) and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. The Magistrate Judge filed his Report and Recommendation on April 11, 2002.

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure, a party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with a copy of the report and recommendation. When objections are timely filed, the party is entitled to a *de novo* review by the district court. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation in a report and recommendation bars that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415 (5th Cir.1996) (*en banc*).

The parties in this cause were properly notified of the consequences of a failure to file objections. However, neither party filed objections to the findings of fact and conclusions of law contained in the report and recommendation. This being the case, the Court, finding no plain error, accepts and adopts the Report in full and incorporates it by reference.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the United States Magistrate Judge's Report and Recommendation filed in this cause is ACCEPTED and ADOPTED.

IT IS FURTHER ORDERED that all of Plaintiff's claims against Bears, Stearns & Co. and Lisbeth R. Barron are DISMISSED.

IT IS FURTHER ORDERED that because there are no more defendants in this case, this case is CLOSED and all pending motions are DISMISSED AS MOOT.

### REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

CAPELLE, United States Magistrate Judge.

The Magistrate Court submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges, as amended, effective December 1, 2001.

Before the Court are the following pleadings:

1) Defendant Bear, Stearns & Co., Inc. and Lisbeth R. Barron's Motion to Dismiss and Memorandum of Law in Support filed January 30, 2002(# 17),

2) Defendants' Exhibits A, B, and C to the Motion to Dismiss,

3) Defendants' Substituted Exhibit B to the Motion to Dismiss,

4) Plaintiff's Response to Motion to Dismiss filed February 11, 2002(# 20), Defendant's Reply filed January 22, 2002(# 13), and

5) Defendant's Reply Brief in Support of Motion to Dismiss filed February 28, 2002(# 23).

As more fully stated below, this Court will recommend that the Motion to Dismiss as to Defendants Bear, Stearns & Co., Inc. and Lisbeth R. Barron be granted, thus dismissing all claims against these two defendants.

### I. PLAINTIFF'S CLAIMS IN ITS COMPLAINT AGAINST LISBETH R. BARRON AND BEAR STEARNS & CO., INC.

Plaintiff is an investor that invested in three entities, Interfase Capital Partners, L.P., Interfase Capital Partners II, L.P., and Interfase Capital Partners III, L.P., between November 1999 and July 2000. From reading the complaint and the pleadings at hand, it is somewhat unclear if Plaintiff's causes of action involve all three entities, however, it is clear many of Plaintiff's causes of action involve its approximate $2 million dollar investment in Interfase Capital Partners III, L.P. ("Interfase Capital III").[1] In the complaint, Plaintiff refers to and relies upon the Private Placement Memorandum ("PPM") that was provided to Plaintiff in connection with its investment in Interfase. The PPM incorporates the subscription and partnership agreements entered into and signed by Millcreek Associates in connection with its purchase in March 2000 of a limited partnership interest in Interfase Capital III. Interfase Capital III is a Delaware Limited Partnership with Scott J. Hyten as managing partner, and Ronald C. Carroll and Melissa Hamilton as partners. The purpose of Interfase Capital III was to invest in a privately-held company named Wild Brain, Inc., which was a start-up internet computer animation company. After several promotional presentations to Wild Brain, Inc., in July 2000, Bear,

---

**1.** The Limited Partner Counterpart Signature Page to Interfase Capital Partners III, L.P., Limited Partnership Agreement shows a subscription commitment by Plaintiff of $3,200,000. Exh. A at D–1.

Stearns & Co., Inc. ("Bear Stearns") entered into an agreement in which Bear Stearns would assist Wild Brain as its "exclusive financial advisor and placement agent in connection with any Financing." Exh. C. The source of the financing needed by Wild Brain was to come from "the proceeds of privately placed equity and/or equity-linked securities" of Wild Brain, with Bear Stearns to provide the necessary services to attempt to effectuate the securities offering, subject to other events occurring. Exh. C.

Plaintiff alleges that Defendant Lisbeth Barron, an employee of Bear Stearns, made misrepresentations to Plaintiff of acts she claimed to have performed and was to perform to achieve an initial public offering ("IPO") of Wild Brain stock. Plaintiff claims these misrepresentations were false at the time when made, that Barron knew of the falsity, and yet made said misrepresentations with the intent that Plaintiff invest in Interfase Capital III, despite her knowledge that the IPO of Wild Brain would never occur. Plaintiff has also sued Bear Stearns because, at all relevant times, it had the ability to control Barron's actions. Plaintiff alleges its suit against Barron and Bear Stearns is based upon liability under federal securities laws, specifically Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j,[2] and under Rule 10b–5 of the Securities Exchange Commission promulgated thereunder, 17 C.F.R. § 240.10b–5,[3] and Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a)[4]; state securities laws, specifically Tex. Civ. Stat. Ann. art. 581–33(A)(2)[5]; and various common law state claims, specifically breach of fiduciary duties, common law fraud, negligent misrepresentation, civil conspiracy, and respondeat superior. Plaintiff seeks compensatory and punitive damages, pre-judgment and post-judgment interest, attorney's fees and costs of court, and any other relief to which it may show itself entitled.

**2.** Section 10(b) of the 1934 Securities Act, entitled "Manipulative and deceptive devices" provides, in pertinent part:

It shall be unlawful for any person, directly or indirectly, . . .
(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement (as defined in section 206B of the Gramm–Leach–Bliley Act), any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
15 U.S.C. § 78j.

**3.** Rule 10(b)–5 provides, entitled "Employment of manipulative and deceptive devices," provides in pertinent part:

It shall be unlawful for any person, directly or indirectly . . .
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, . . . in connection with the purchase or sale of any security.
17 C.F.R. § 240.10b–5.

**4.** Section 20(a) of the 1934 Securities Act, entitled "Liability of controlling persons and persons who aid and abet violations," provides:

(a) Joint and several liability; good faith defense
Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.
15 U.S.C. § 78t.

**5.** The relevant text of this statute is cited later in this document.

## II. PENDING MOTION AND RESPONSES AND REPLIES

In their motion to dismiss, Defendants Bear Stearns and Barron allege that this Court must review Plaintiff's causes of action under the strict pleading requirements for securities fraud cases established by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u–4 (2001). Defendants claim that, since the passage of the PSLRA, the court no longer acts as a passive reviewer of the complaint's allegations but must "scrutinize and dismiss securities fraud claims of dubious merit brought by opportunistic private plaintiffs (or, more accurately, plaintiffs' counsel) in an effort to extract large settlements through abuse of the discovery process." Motion to Dismiss at 6. Using the PSLRA standards, Defendants claim that Plaintiff's allegations against these two defendants are "fundamentally flawed, legally unsustainable and woefully short of the stringent procedural requirements imposed by the PSLRA and relevant case law." Id.

Defendant asserts a variety of grounds for the dismissal of Plaintiff's claims against them. These grounds are set forth below, with Plaintiff's responses thereto, if made.

### A. Plaintiff's Rule 10b–5 Claim Fails as a Matter of Law

#### 1. Complaint fails to Plead Specific Facts Giving Rise to Scienter

Plaintiff has made this claim against both Defendants. Defendants argue that Plaintiff's Rule 10b–5 claim should be dismissed because its allegations fail to state an inference of a fraudulent intent, and even assuming for the purposes of this motion that the allegations are true, the allegations fail to meet the heightened pleading standard of the PSLRA. Defendants claim that Plaintiff has failed to set forth specific facts showing a strong inference that Defendants intended to deceive, manipulate or defraud Plaintiff in connection with Plaintiff's investment in Interfase Capital III, citing In re Comshare, Inc. Sec. Litig., 183 F.3d 542, 553 (6th Cir.1999) (holding securities fraud claims cannot rest on speculation and conclusory allegations); Tuchman v. DSC Communications Corp., 14 F.3d 1061, 1067 (5th Cir.1994) ("plaintiff must plead specific facts, not mere conclusory allegations"); Melder v. Morris, 27 F.3d 1097, 1102 (5th Cir.1994) (rejecting conclusory statements that defendants acted knowingly or recklessly as inadequate pleading of scienter). Defendants argue Plaintiff's mere allegation of Defendants' motive and opportunity is insufficient to meet the pleading requirement of particularized facts giving rise to a strong inference of scienter, citing Nathenson v. Zonagen, Inc., 267 F.3d 400, 412 (5th Cir.2001). Additionally, Defendants argue that simply pleading Defendants hoped to receive a fee for promoting the Wild Brain IPO is insufficient to meet a strong inference of scienter, citing Tuchman, 14 F.3d at 1068 and Coates v. Heartland Wireless Comms., Inc. 100 F.Supp.2d 417, 431 (N.D.Tex. 2000) ("[A]ssertions that could almost universally be true, such as the desire to raise capital, or successfully bring a public offering to fruition ... are inadequate of themselves to plead motive."). As another ground, Defendants argue that Plaintiff's merely alleging Defendants should have known the Wild Brain deal was not as good a deal as claimed does not equate to pleading specific facts indicating Defendants knew the statements were false or misleading, citing Maldonado v. Dominguez, 137 F.3d 1, 9 (1st Cir.1998) (noting that conscious behavior requires strong inference that defendant knew that the statement was false or misleading); In re

*Comshare, Inc. Sec. Litig.*, 183 F.3d at 553 (plaintiff must allege specific facts that raised red flags putting defendants on notice that statements were false). As a final point, Defendant Barron alleges that Plaintiff does no more than make conclusory allegations that she was "a highly regarded analyst," and that she "knew" her representations were made "with the intent to deceive, manipulate, or defraud" Plaintiff, citing Complaint at 13, ¶ 41. Defendant Barron asserts these conclusory allegations are insufficient to create a strong inference of scienter, citing *Comshare*, 183 F.3d at 553; *Tuchman*, 14 F.3d at 1067; *Melder*, 27 F.3d at 1102.

### 2. *Alleged Misrepresentations were not of a Type Reasonably Relied Upon*

Defendants argue that Plaintiff, to prevail on its Rule 10b–5 claim must prove justifiable reliance on Defendants' alleged statements, citing *Rubinstein v. Collins*, 20 F.3d 160, 166 (5th Cir.1994). Because the fulfillment of an IPO is never a certainty by reason of market conditions and events affecting market perception of a company, all beyond anyone's control or prediction, Defendants argue Plaintiff cannot show it justifiably relied upon any statements made regarding the potential IPO of Wild Brain. Defendants assert that case law supports its position that no reasonable investor could rely on representations about uncertain future events and then base a fraud claim upon such alleged misrepresentations, citing *Dooner v. Keefe, Bruyette & Woods, Inc.*, 157 F.Supp.2d 265 (S.D.N.Y.2001) (rejecting plaintiff's fraud claim predicated on statements concerning a future IPO). Thus, Defendants assert that Plaintiff's allegations that Defendants claimed Wild Brain to be a "great company," it "would inevitably be taken public," and the IPO was a "great deal," citing Complaint at 7 (¶ 25) and 8 (¶ 27), are merely expressions of general optimism for the hoped-for success of Wild Brain but are not statements that Plaintiff should reasonably have relied upon.

Additionally, Defendants assert the PPM expressly warned Plaintiff that Interfase Capital III's investment in Wild Brain would be "highly volatile," the markets for animation and animated websites like Wild Brain were "emerging markets subject to substantial risk and uncertainties" and that "[i]t was possible that there will never be a public market for securities in the Investment [Wild Brain] held by the fund," citing Exh. A (PPM at 13, 15). Defendants also assert that, in the Subscription Agreement, which Plaintiff signed, Plaintiff warranted and represented that it relied only upon representations contained in the Subscription Agreement and Partnership Agreement when making its investment in Interfase Capital III, citing Exh. A. (Subscription Agreement at 4). Defendants assert that a review of the marketing and promotional materials presented by Defendant Bear Stearns to Wild Brain that Plaintiff relies upon in its Complaint shows that these documents are full of cautionary language, qualifications, and contingencies that make clear an IPO might never occur, citing Exh. B. (Feb. 2, 2000 presentation documents at 26–29) and (Feb. 16, 2000 presentation documents at 9–11, 14–16, 20, 22–24). For example, Defendants state that the materials provided to Wild Brain show the IPO valuation was "preliminary," "estimated," and that Wild Brain's valuation will be "driven by financial projections [prepared by Wild Brain] and the mix of its various businesses," citing Exh. B. (Feb. 2, 2000 presentation documents at 28–29) and (Feb. 16, 2000 presentation documents at 21–22). Defendants allege these statements are so qualified and cautionary that they cannot be considered material and, thus, not capable

of being reasonably relied upon by Plaintiff, citing *Rubinstein,* 20 F.3d at 167, 171 ("[C]autionary language also affects the reasonableness of the reliance on optimistic projections.").

### 3. The Alleged Statements are not Actionable

#### a. The pre-IPO statements were not false when made.

Defendants allege Plaintiff's Rule 10b–5 claim fails because it does not assert the statements were false when made but asserts these statements later were proved to be false when the Wild Brain IPO never occurred, citing to Plaintiff's Complaint at 7–12. Defendants claim Plaintiff must allege and ultimately prove the pre-IPO statements were false when made, citing *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 203 (5th Cir.1998) for the fact that liability under Rule 10b–5 for predictive statements will depend on "whether the predictive statement was 'false' when made" and not on whether the prediction later proved to be wrong. Defendants also cite *Shushany v. Allwaste, Inc.,* 992 F.2d 517, 520 (5th Cir.1993) that "[s]tatements that are predictive in nature are actionable only if they were false when made." Defendants assert Plaintiff never alleges the pre-IPO statements were false when made, that Defendants did not believe the statements to be true when made, that the predictive statements lacked any reasonable basis, or that Defendants knew of undisclosed facts that would seriously undermine the accuracy of the statements, citing *Griffin v. GK Intelligent Sys., Inc.,* 87 F.Supp.2d 684, 689 (S.D.Tex.1999) ("A prediction may be actionable as a false statement of fact within the meaning of the securities laws if (1) the speaker did not genuinely believe the statement was true; (2) there was no reasonable basis for the speaker to believe the statement; and (3) the speaker was aware of an undisclosed fact tending seriously to undermine the accuracy of the statement.").

#### b. The pre-IPO statements were mere puffery.

Defendants assert that the pre-IPO statements were mere puffery and not actionable. Defendants cite to Plaintiff's Complaint in which it quotes Defendants as stating that Wild Brain was a "great company," that Barron "knew everyone," and that the Wild Brain IPO was the "best one" and that it had "great sizzle" and was a "great story," citing Complaint at 7 (¶ 25), 10 (¶ 33), and 11 (¶ 34). Defendants assert that such statements are mere puffery. Defendants cite to *In re Sec. Litig, BMC Software, Inc.,* 183 F.Supp.2d 860, 888 (S.D.Tex.2001) (citing *Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1446 (5th Cir.1993)), for the fact that "[v]ague, loose optimistic allegations that amount to little more than corporate cheerleading are 'puffery,' 'projections of future performance not worded as guarantees,' and are not actionable under federal securities law because no reasonable investor would consider such vague statements material and because investors and analysts are too sophisticated to rely on vague expressions of optimism rather than specific facts."

#### c. The pre-IPO statements were not guarantees.

Defendants assert that the pre-IPO statements that Plaintiff cites Defendants as making are only projections of future performance and are not guarantees and, thus, not actionable under Rule 10b–5. For example, Plaintiff's quote in the Complaint that "Wild Brain ... would inevitably be taken public," that "Bear Stearns would carry out an IPO of Wild Brain," that "Jeff Silverstein ... was going to work for Wild Brain," and that "Barron

was going to Europe ... to promote Wild Brain Stock," citing Complaint at 7 (¶ 25), 9 (¶ 28), and 12 (¶¶ 37, 38), are no more than "projections of future performance not worded as guarantees [and] are generally not actionable under the federal securities laws," citing *Krim*, 989 F.2d at 1446. Additionally, Plaintiff's statement that Bear Stearns had provided it with rates of return and valuations of Wild Brain, citing Complaint at 9 (¶¶ 29, 30), are projections of future financial performance and are words of such optimism that they cannot constitute actionable fraud under Rule 10b–5, citing *Hausberg v. CompUSA*, 1995 WL 811960, at *5, 1995 U.S. Dist. LEXIS 20333, at *19 (1995). For Plaintiff to allege that the information available to Defendants did not support these projections, citing Complaint at 9 (¶ 29), is nothing more than an allegation that the claims had no basis. Defendants assert that, even if the statements were negligently made, this does not suffice to state a claim under Rule 10b–5, citing *Rubinstein*, 20 F.3d at 169.

Defendants assert that any predictive statements they made were coupled with cautionary language and, thus, are not actionable as a matter of law under the "bespeaks caution doctrine," citing *Zuckerman v. Foxmeyer Health Corp.*, 4 F.Supp.2d 618, 624 (N.D.Tex.1998) (citing Rubinstein, 20 F.3d at 166–67) ("Under the 'bespeaks caution' doctrine, if a defendant adds a cautionary statement to the predictive statement, then the statements may not be actionable as a matter of law."); *Tarica v. McDermott Int'l, Inc.*, 2000 WL 1346895, at *11, 2000 U.S. Dist. LEXIS 14144, at *35–*36 (E.D.La. Sept. 19, 2000) (same). Defendants assert that the purported financial projections and generalized statements concerning the likely post-IPO returns for Interfase Capital III are predictive statements that were made along with the qualified and cautionary

language contained in the Bear Stearns marketing materials presented to Wild Brain. Also, Defendants argue that the "[i]nclusion of cautionary language—along with disclosure of any firm-specific adverse facts or assumptions—is, of course, relevant to the materiality inquiry, for such inclusion or disclosure is part of the 'total mix of information,'" citing *Rubinstein*, 20 F.3d at 168.

### 4. The Alleged Conduct of Defendants did not Cause Plaintiff's Loss

Defendants assert that Plaintiff cannot show its loss was caused by the fact that no IPO was done for Wild Brain because Plaintiff asserts in its Complaint that the funds it invested in Interfase Capital III were directed by Scott Hyten, an employee of Interfase Capital, to other unsuccessful investments, citing Complaint at 21 (¶ 67), 22 (¶ 68). Defendants assert that in order to state a claim under section 10(b) of the 1934 Act and Rule 10b–5, a plaintiff must allege, in connection with the purchase or sale of securities, "(1) a misstatement or an omission (2) of material fact (3) made with scienter (4) on which plaintiff relied (5) that proximately caused [the plaintiffs'] injury," quoting *Zonagen*, 267 F.3d at 406–07 (citing *Tuchman v. DSC Communications Corp.*, 14 F.3d at 1067).

Defendants assert that case law interpreting Rule 10b–5 claims draws a distinction between "transaction causation," which is proof that but-for the defendant's actions, the plaintiff would not have acted, and "loss causation," or proof that the misrepresentations were in some "reasonably, direct or proximate way responsible for his loss," citing *Huddleston v. Herman & MacLean*, 640 F.2d 534, 549 (5th Cir. 1981), rev'd in part on other grounds, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983), and *Zonagen*, 267 F.3d at 413. Defendants assert that the proximate cause

element of a Rule 10b–5 requires proof of "loss causation," with proof of the transaction causation being insufficient to state a Rule 10b–5 claim, citing *Huddleston*, 640 F.2d at 549. Defendants assert that Plaintiff cannot prove that Defendants' alleged misrepresentations proximately caused its loss because Plaintiff alleges an intervening, superceding cause for the loss, the misdirection of funds by Hyten to "other, less advantageous and riskier investments, that were not known to or approved by Plaintiff,"that Hyten "made loans to other funds and ill-fated companies," and that Hyten made loans to "failing businesses" and that these loans approximating $5 million were made using Interfase Capital III funds without the approval of the limited partners of Interfase Capital III, citing Complaint at 21 (¶ 67), 22 (¶ 68).

### 5. *Plaintiff's Response and Defendants' Reply*

In response, Plaintiff argues that Defendants would have the Court use a very limited interpretation of the fifth element required by *Zonagen*, the proximate cause element, to establish a Rule 10b–5 claim. Instead, Plaintiff cites *Brown v. Ivie*, 661 F.2d 62, 65 (5th Cir.1980) that Plaintiff must only show Defendants' fraud "touched" the sale of a security to Plaintiff, not that there be some direct or close relationship between the fraudulent transaction and the purchase or sale of stock. For the third element, Plaintiff alleges that it has met the scienter requirement stated by *Zonagen* by its alleging Defendants' recklessness in making false statements, i.e., Defendants were obviously aware of the falsity of their representations when made because the statements involved actions that allegedly had already occurred. Plaintiff alleges that the statements were not just mere puffery or forward looking statements and were the kind of representations upon which a rea-

sonable investor could rely. Plaintiff alleges, for example, that Barron's statements were statements about her past and her prior accomplishments in financing companies. Plaintiff supports its claim that the statements were false when made or were made with severe recklessness by the following allegations: the IPO of Wild Brain never occurred, Barron never performed some pre-IPO activities, Barron was a college friend of both the managing partner of Interfase Capital III and Wild Brain, Barron lied about her previous successes with IPOs, Barron never invested in Wild Brain, and Barron had repeated telephone conversations with Plaintiff. Plaintiff alleges it does not have to prove its claims at this point, but it must only plead its claims sufficiently to put Defendants on notice of the claims against them. It argues that motions to dismiss are disfavored and rarely granted.

First, Defendants argue that motions to dismiss are routinely granted when the plaintiff fails to comply with the PSLRA's heightened pleading requirement, citing *Mortensen v. AmeriCredit Corp.*, 123 F.Supp.2d 1018 (N.D.Tex.2000); *In re Baker Hughes Sec. Litig.*, 136 F.Supp.2d 630 (S.D.Tex.2001). Defendants reply that Plaintiff cannot merely plead that Bear Stearns acted with "intent to deceive, manipulate, or defraud" and meet the scienter requirement. Additionally, Defendants assert that Plaintiff's allegation that Defendants were motivated by the possible collection of millions of dollars in fees from the IPO is counteracted by its statement that Defendants knew the IPO would never occur. Defendants assert that scienter cannot be inferred from conclusory allegations or allegations of universal motivations, such as the desire to make money, citing *Zonagen*, 267 F.3d at 407. Defendants also assert that scienter is not established by irrational or illogical motivation,

i.e., that Defendants were motivated by the potential fees yet also know the IPO would never occur, citing *Wilson v. Bernstock,* 195 F.Supp.2d 619, 634 (D.N.J.2001) ("inference of scienter [must be] both 'reasonable,' 'rational,' or 'plausible' and strong"). Defendants assert that the Complaint fails to mention the word "recklessness" much less plead any specific facts from which the Court could infer recklessness such that Defendants acted with anything approaching actual intent to defraud.

Defendants reply that Plaintiff ignores the case law that it is unreasonable as a matter of law for an investor to rely on alleged representations regarding a future IPO. Defendants reply that Plaintiff ignores the cautionary language in the PPM and in the marketing materials Bear Stearns provided Wild Brain. Defendants also point out that Plaintiff asserts no case law that the statements made were not puffery nor does Plaintiff address the "bespeaks caution" doctrine. Again, they allege that Plaintiff's assertion of Scott Hyten's misdirection of Interfase Capital III's funds defeats the element of proximate cause because there is no loss causation attributable to any of their alleged bad acts..

B. *Plaintiff's Section 20(a) of the Exchange Act Fails as a Matter of Law*

1. *Defendants' Assertions*

Plaintiff has made this claim against Bear Stearns because, as the employer of Barron, it could control her activities with regard to its participation in the IPO such that it could prevent and/or correct her misrepresentations and failed to do so. Defendants assert that, because Plaintiff has failed to state a claim under Rule 10b–5, it cannot assert a claim under Section 20(a) of the Exchange Act. Defendants assert that control person liability under Section 20(a) is derivative in that it is predicated on the existence of an independent violation of the securities laws, citing *Rubinstein,* 20 F.3d at 166 n. 15. Additionally, Defendants assert that "[w]ithout a primary violation, however, there can be no secondary, or derivative, violation under Section 20(a), which creates liability for 'controlling persons,' " citing *Fant v. Perelman,* 1999 WL 199078, 1999 U.S. Dist. LEXIS 5694 (S.D.N.Y. April 9, 1999). Thus, Defendants assert that, because Plaintiff cannot establish a violation of Rule 10b–5, it has no "controlling person" claim against Bear Stearns under Section 20(a) of the Exchange Act.

2. *Plaintiff's Response and Defendants' Reply*

Plaintiff disagrees that its Section 20(a) claim must fail because it asserts that its Rule 10b–5 claim is viable.

C. *Plaintiff's Section 20(a) of the Exchange Act and Rule 10b–5 Claims are Barred by Limitations*

1. *Defendants' Assertions*

Defendants assert that Plaintiff's Rule 10b–5 claim must be filed "within one year after the discovery of the facts constituting a violation and within three years after such violation," citing *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 364, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). Defendants assert that the one year period begins to run on the date the plaintiff discovers, or in the exercise of due diligence, should have discovered the alleged fraud, citing *Topalian v. Ehrman,* 954 F.2d 1125, 1133 (5th Cir.1992); *Jensen v. Snellings,* 841 F.2d 600, 606 (5th Cir. 1988). Defendants assert that Plaintiff alleges in the Complaint it had the Bear Stearns marketing materials presented to Wild Brain prior to investing in Interfase Capital III, citing Complaint at 6 (¶ 23),

and that these materials showed the actual valuation of Wild Brain would be "closer to $400 million at the high end of the spectrum," citing Complaint at 6 (¶ 30). Defendants also assert that Plaintiff alleges it was told by Barron in telephone conversations that Wild Brain would be valued at $600 million, citing Complaint at 6 (¶ 30). Defendants assert that Plaintiff made investments in Interfase Capital III through July 2000, citing Complaint at 1. Thus, Defendants argue that Plaintiff knew of this alleged falsity, i.e., the differing values for Wild Brain, as early as July 2000 but did not sue until November 29, 2001, over one year later, causing limitations to bar its Rule 10b–5 claim.[6] Because limitations bars the Rule 10b–5 claim, Defendants assert the Section 20(a) claim is likewise barred because Plaintiff cannot establish a core securities violation on which to base the Section 20(a) claim.

### 2. *Plaintiff's Response and Defendants' Reply*

Plaintiff argues it had one year from discovery of the fraud to file suit, and the fraud was discovered in November 2000. It asserts that the Court must make an evidentiary finding to establish when the statute began to run and, as such, it is improper for the Court to resolve the notice issue in a motion to dismiss, citing *Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1549 (10th Cir.1996), *Axler v. Scientific Ecology Group, Inc.*, 1999 WL 1209512, at *10–11 (D.Mass. May 21, 1999).

Defendants reply that Plaintiff ignores the case law on limitations, that *Lampf* establishes a one-year period and that *Topalian* requires this period to begin when the purchaser of a security knew, or in the exercise of reasonable diligence, should

have known of the alleged wrongdoing. Defendants assert that Plaintiff should have known of the alleged contradictions in value made in the oral statements and the language of the PPM and the Bear Stearns marketing materials in July 2000, not November 2000 as Plaintiff has claimed. Thus, Defendants argue the suit filed in November 2001 was too late.

### D. *Plaintiff's Common Law Fraud Claim Fails as a Matter of Law*

#### 1. *Defendants' Assertions*

Plaintiff has asserted this claim against both Defendants. Defendants assert that, to state a common law fraud claim under Texas law, a plaintiff must allege (1) a material misrepresentation was made; (2) which was false; (3) which was either known to be false when made or was asserted without knowledge of its truth; (4) which was intended to be acted upon; (5) which was relied upon, and (6) which caused injury, citing *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998); *Sears, Roebuck & Co. v. Meadows*, 877 S.W.2d 281, 282 (Tex.1994); *DeSantis v. Wackenhut*, 793 S.W.2d 670, 688 (Tex. 1990).

Defendants present several arguments as to why the pre-IPO statements were not material, were not false, and were not known to Defendants to be false when made or asserted without knowledge of its truth. First, Defendants assert that Plaintiff's common law fraud claim is based upon the fact that the pre-IPO statements were false because the Wild Brain IPO did not occur. Defendants assert that, as set forth above, the fact that the IPO did not occur does not make any of the pre-IPO

---

**6.** The Court notes that Plaintiff alleges the telephone conversations began in February 2000 in which Barron allegedly told Donald Huffines, one of the partners of Plaintiff, that Wild Brain would be valued at $600 million.

statements false. Second, Defendants assert that Plaintiff does not allege that the pre-IPO statements were false when made or that Defendants made the statements without knowledge of their truth. Defendants rely on *Rubalcaba v. Pacific/Atlantic Crop Exchange, Inc.*, 952 S.W.2d 552, 556 (Tex.App.-El Paso 1997, no writ) ("Fraud is never presumed, and when it is alleged, the facts sustaining it must be clearly shown."). Third, Defendants assert that the statements complained of are nothing more than puffery and, under Texas law, do not constitute actionable fraud. Defendants alleged statements that Wild Brain was a "great company," that Barron "knew everyone," and that the Wild Brain IPO was the "best one" and that it had "great sizzle" and was a "great story," Complaint at 7 (¶ 25), 10 (¶ 33), and 11 (¶ 34), are puffery and are not material, citing *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 276 (Tex.1995) ("An actionable representation is one concerning a material fact; a pure expression of opinion will not support an action for fraud."); *Dyer v. Caldcleugh & Powers*, 392 S.W.2d 523, 529–30 (Tex.Civ.App.-Corpus Christi 1965, writ ref'd n.r.e.) (dealer's talk, expressions of opinion, mere puffing not actionable); *Paull v. Capital Resource Management*, 987 S.W.2d 214, 218–19 (Tex.App.-Austin 1999, pet. denied) ("puffing" or "dealer's talk" not actionable as misrepresentations).

Defendants next argue that Plaintiff could not have relied upon the pre-IPO statements in making its decision to invest in Interfase Capital III. First, as more fully stated above, under the *Dooner* case, no reasonable investor could rely on statements concerning a future IPO. Second, the Bear Stearns marketing materials to Wild Brain contain multiple statements that qualify and condition any IPO issuance and its value upon such factors as market perception of Wild Brain's business

and long-term growth prospects and current industry perception, citing Exh. B. at 16. Third, the PPM and the subscription and partnership agreements set forth many admonishments that the investment in Interfase Capital III was highly speculative and that there might never be a market for Wild Brain securities.

As a final point, Defendants argue that Plaintiff has failed to show that the alleged misrepresentations caused the loss. Defendants assert that, under Texas law, a plaintiff alleging common law fraud must not only establish that he detrimentally relied on a misrepresentation or falsity, but also that the misrepresentation or falsity "was the proximate cause of the damages that he ... is seeking to recover," citing *Florida Dept. of Insurance v. Chase Bank of Texas Nat'l Ass'n*, 2001 WL 124951, at *42 (N.D.Tex. Feb.9, 2001) (citing *Ratner v. Sioux Natural Gas Corp.*, 770 F.2d 512, 519 (5th Cir.1985)), *aff'd on other grounds*, 274 F.3d 924 (5th Cir.2001). Defendants assert that the Complaint, on its face, alleges an intervening, superceding cause for Plaintiff's loss, being the misdirection of Interfase Capital III's funds into other endeavors. In any event, given the multiple contingencies stated in the Bear Stearns marketing materials, Defendants assert that Plaintiff cannot establish that Defendants' alleged misrepresentations proximately caused the loss.

### 2. *Plaintiff's Response and Defendants' Reply*

Plaintiff agrees that the case of *Formosa Plastics* sets out the elements of fraud in Texas. Plaintiff asserts that its allegations show Defendants made material misrepresentations and its allegations contain statements of future representations of what Barron would do and also representations of her past actions and her alleged expertise gained in the securities field.

Plaintiff alleges that it can show intent not to perform a promise by subsequent acts of the promisor. The Court notes that Plaintiff provides no examples of these subsequent acts.

### E. *Plaintiff's Texas Securities Act Claim Fails as a Matter of Law*

#### 1. *Defendants' Assertions*

Plaintiff has asserted this claim against both Defendants. Defendants assert that Plaintiff has plead, but cannot sustain, a viable claim against them under Section 33(a) of the Texas Securities Act, which provides, in pertinent part:

A. Liability of Sellers

. . .

(2) Untruth or Omission. A person who offers or sells a security . . . by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, is liable to the person buying the security from him . . . .

Tex.Rev.Civ. Stat. Ann. art. 581–33(a)(2) (Vernon Supp.2002).

Defendants assert that, in order to prevail on this claim, Plaintiff must show that it was in privity with Bear Stearns, and it cannot do so. Defendants assert that the Comments to the 1977 revisions to the Texas Securities Act expressly note that Section 33(a)(2) is a "privity" provision "allowing a buyer to recover from his offeror or seller . . .," citing the Comment 1997 Amendment and *Frank v. Bear, Stearns & Co.*, 11 S.W.3d 380, 382 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) ("Commentators at the time of the revision had little doubt that the revision was intended to contain a privity provision."). Defendants assert that neither of them qualify as an offeror or seller for purposes of Section 33(a) because they did not offer to sell, nor did they sell, any security to Plaintiff.

Additionally, Defendants assert this claim must fail because Plaintiff cannot show that any of the alleged misrepresentations were material. Defendants assert that, under the Texas Securities Act, a plaintiff must establish that the alleged misrepresentation was material, and, as such, "created an appreciable likelihood that it could have significantly affected the decisions of a reasonable investor by substantially altering the information available to him in deciding whether to invest," citing *In re Westcap Enterprises*, 230 F.3d 717, 726 (5th Cir.2000). Again, Defendants assert that the contingencies and cautionary language contained in the PPM and subscription and partnership agreements make any misrepresentations not material because no reasonable investor would have relied upon them in light of the total mix of information available, citing *Paull v. Capital Resource Management*, 987 S.W.2d at 218–19 ("puffing" or "dealer's talk" not actionable as misrepresentations), and *Texas Capital Secs., Inc. v. Sandefer*, 58 S.W.3d 760, 776 (Tex.App.-Houston [1st Dist.] July 26, 2001, pet. denied) ("Statements of opinion, including opinions regarding value are generally not actionable under the [Texas Securities] Act.").

#### 2. *Plaintiff's Response and Defendants' Reply*

Plaintiff asserts that Barron's false statements induced Plaintiff into investing in Interfase Capital III and that she helped Scott Hyten in obtaining this investment. Plaintiff asserts that its Texas Securities Act claim should not be dismissed because Barron claimed to have experience in the securities arena, and it was reasonable for Plaintiff to rely on her statements, but she never performed acts

she claimed she would do, causing the IPO of Wild Brain to never occur and causing Plaintiff damages.

Defendants reply that, again, there must be privity between Plaintiff and Bear Stearns to give Plaintiff a claim under section 33(A)(2) of the Texas Securities Act, and there was no privity.

### F. *Plaintiff's Negligent Misrepresentation Claim Fails as a Matter of Law*

#### 1. *Defendants' Assertions*

Defendants assert that Plaintiff cannot establish the required elements for this claim. Defendants assert that, under Texas law, "[t]he elements of a cause of action for negligent misrepresentation are: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation," quoting *Allied Vista, Inc. v. Holt,* 987 S.W.2d 138, 141 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (citing *Federal Land Bank Ass'n v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991)). Also, "the sort of 'false information' contemplated in a negligent misrepresentation case is a misstatement of existing fact, not a promise of future conduct," quoting *Allied,* 987 S.W.2d at 141.

First, Defendants assert that the misrepresentations Plaintiff recites concerned future acts or prospective conduct that Defendants would take in connection with the anticipated IPO of Wild Brain, for example, Plaintiff states that Bear Stearns agreed to fund a pre-IPO private placement of [Wild Brain], "Bear Stearns would carry out an IPO of Wild Brain ...,"

"Barron was going to invest $500,000 of her own money in the pre-IPO private placement," and Barron was going to Europe in the fall of 2000 to put on a 'Road Show' ... to promote ... Wild Brain stock," citing Complaint at 8 (¶ 26), 9 (¶ 28), 11(¶ 36), 12 (¶ 38). Defendants assert that Plaintiff's claim of negligent misrepresentation is based upon the fact that Defendants did not carry out the conduct stated, however, a misstatement of a promise of future performance or a promise of future conduct does not provide a basis for liability for negligent misrepresentation, for which Defendants cite *Allied Vista,* 987 S.W.2d at 141 (negligent misrepresentation requires a false representation concerning an existing fact, not a promise of future conduct), *Smith v. Sneed,* 938 S.W.2d 181, 185 (Tex.App.-Austin 1997, no writ) ("In order to establish a cause of action for negligent misrepresentation, however, there must be proof of the false representation of an existing fact, not the breach of a future promise.").

As a second point, Defendants assert that Plaintiff cannot establish justifiable reliance, which is a require element of a negligent misrepresentation claim under state law. As previously stated, Defendants argue no reasonable investor would rely on predictive statements concerning an IPO because IPO's are never a certainty due to market conditions that cannot be controlled, citing *Dooner,* 157 F.Supp.2d at 279.

#### 2. *Plaintiff's Response and Defendants' Reply*

Plaintiff asserts that it did not assert a claim for negligent misrepresentation against Defendants but will now seek to amend its complaint to do so. This Court notes that Plaintiff included as Count Seven of its Original Complaint a cause of action for "Negligent Misrepresentation"

but this claim was apparently only brought against Scott Hyten.

### G. Plaintiff's Breach of Fiduciary Duty Claim Fails as a Matter of Law

Plaintiff has asserted this claim against both Defendants. Defendants argue that Plaintiff claims in the Complaint that "Barron breached this [fiduciary] duty to Wild Brain, and effectively to Plaintiffs in their capacity as investors in Wild Brain," citing Complaint at 27 (¶ 82),[7] but did not assert that Defendants owed a fiduciary duty to Plaintiff nor alleged any facts giving rise to any such duty. Defendants assert that any breach of fiduciary duty owed to Wild Brain would give Wild Brain, not Plaintiff, a cause of action. Additionally, any claim for damages related to an injury suffered by a corporation belong to the corporation, such as Wild Brain, and not to its shareholders, citing *7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211, 221 (5th Cir.1994) (noting that claims for injuries sustained by corporation can only be brought by the corporation). Defendants assert that, at no time, did Bear Stearns or Barron have a contractual or any relationship with Plaintiff. Additionally, because Plaintiff did not invest in Wild Brain, it does not possess a shareholder interest that would allow it to bring a derivative claim, citing *Rathborne v. Rathborne*, 683 F.2d 914, 919 (5th Cir. 1982) ("[T]he corporation's shareholders do not have standing to directly assert a claim which 'belongs to' the corporation."). As such, Defendants assert this claim must fail as a matter of law.

### 2. Plaintiff's Response and Defendants' Reply

Plaintiff does not directly respond to Defendants' grounds for dismissing this claim but the Court will assume that Plaintiff opposes it.

### H. Plaintiff Lacks Standing to Assert Claims against Bear Stearns for Lost Investment Opportunities or Returns Related to the Prospective IPO of Wild Brain

### 1. Defendants' Assertions

Defendants assert Plaintiff did not invest in Wild Brain and any lost opportunity claims belong to Interfase Capital III, not Plaintiff. Defendants argue Plaintiff's investment, no matter how induced, was in Interfase Capital III, and Interfase Capital III contemplated an investment in Wild Brain. Thus, Defendants argue Plaintiff only stood to indirectly benefit from an IPO of Wild Brain in its capacity as a limited partner of Interfase Capital III, citing *Parker & Parsley*, 38 F.3d at 221 (" '[A] limited partner's power to vindicate a wrong done to the limited partnership and to enforce redress for the loss or diminution in value of his interest is no greater than that of a shareholder of a corporation.' "). Because a claim under Rule 10b–5 requires that the "plaintiff be an actual 'purchaser' or 'seller' of securities who has been injured by deception or fraud 'in connection with' the purchase or sale,' " citing *Parker & Parsley*, 38 F.3d at 226, Defendants argue Plaintiff does not have standing to assert such a claim because it did not purchase a security of Wild Brain or anything that would qualify as such. Thus, Defendants assert any claim for damages due to the failure of the IPO of Wild Brain to occur belongs to Interfase Capital III, not the limited partners.

---

7. The Court does not understand this assertion in Plaintiff's complaint because, first there is only one Plaintiff, not multiple Plaintiffs, and second, there are not direct assertions that "they" invested in Wild Brain. *See* Complaint at 27 (¶ 82).

2. *Plaintiff's Response and Defendants' Reply*

Plaintiff states that it does not assert a claim for loss of investment in its Complaint. However, it states that it is seeking its loss of investment as damages allowable under its common law fraud claim.

I. *Plaintiff's Conspiracy Claim Fails as a Matter of Law*

1. *Defendants' Assertions*

Plaintiff has asserted this claim against both Defendants. Defendants assert that, under Texas law, a civil conspiracy requires "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result," citing *Operation Rescue–National v. Planned Parenthood of Houston and Southeast Texas, Inc.*, 975 S.W.2d 546, 553 (Tex.1998) (citing *Massey v. Armco Steel Co.* 652 S.W.2d 932, 934 (Tex.1983)). In other words, a conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. Defendants assert that conspiracy is a derivative tort and can only be sustained where there is proven liability for any underlying tort, citing *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex.1996). Because Plaintiff's civil conspiracy claim is predicated on its common law fraud claim, Defendants assert that Plaintiff must prove Defendants committed fraud in order to sustain its civil conspiracy claim. Defendants allege that Plaintiff must be basing its civil conspiracy claim on the common law fraud claim because the only other tort alleged in the Complaint is one for negligent misrepresentation, and case law prohibits a negligence claim from being a basis for a conspiracy claim, citing *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex.1996) ("Because negligence by definition is not an intentional wrong, one cannot agree or conspire to be negligent."). Thus, Defendants assert that the dismissal of the fraud claim mandates dismissal of this conspiracy claim.

2. *Plaintiff's Response and Defendants' Reply*

Plaintiff agrees with Defendants' statement of the elements needed for a conspiracy claim. However, Plaintiff argues it has set forth that Barron participated in the fraudulent actions of Scott Hyten and that a conspiracy existed. As such, Plaintiff argues this claim should not be dismissed.

J. *Plaintiff's Respondeat Superior Claim Against Bear Stearns Fails as a Matter of Law*

1. *Defendants' Assertions*

Plaintiff has asserted this claim against Bear Stearns as Barron's employer, and, as such, asserts Bear Stearns is liable for her common law fraud and/or breach of fiduciary duty. Defendants state that, under this doctrine, "the employer is liable for the negligence of its employee, though there has been no negligence on the part of the employer." citing *St. Anthony's Hosp. v. Whitfield*, 946 S.W.2d 174, 178 (Tex.App.-Amarillo 1997, writ denied). Defendants assert because there is no viable claim against Barron, there can be no claim against Bear Stearns for employer liability, citing *Ford v. Fluor Eng'g & Constructors, Inc.*, 711 S.W.2d 327, 328 (Tex. App.-Beaumont 1986, writ ref'd n.r.e.) (under respondeat superior, employer not liable if employee not liable).

2. *Plaintiff's Response and Defendants' Reply*

Plaintiff asserts that it has sufficiently set forth claims against Barron for fraud

and violations of both federal and Texas securities laws. It asserts that, at all times, Barron was an employee of Bear Stearns and subject to Bear Stearns' control. As such, it asserts this claim should not be dismissed.

## III. *ANALYSIS*

For the purposes of this motion to dismiss, the Court "will accept the facts alleged in the complaint as true and construe the allegations in the light most favorable to the plaintiffs." *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 406 (5th Cir.2001). In ruling upon this motion, the Court can consider the complete copies of the documents referenced in and incorporated by reference in the Complaint. *See Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017–18 (5th Cir.1996); *Franks v. Prudential Health Care Plan*, 164 F.Supp.2d 865, 872 (W.D.Tex. Feb.28, 2001)(documents referenced in complaint are properly reviewable by the court when considering a motion to dismiss); *Lemmer v. Nu–Kote Holding, Inc.*, 2001 WL 1112577, at *1 n. 1, 2001 U.S. Dist. LEXIS 13978, at *4 n. 1 (N.D.Tex. Sept. 6, 2001).

■ The Court will first review Defendants' request to dismiss Plaintiff's Rule 10b–5 Claim as a matter of law. Since the Supreme Court's decision in *Ernst & Ernst v. Hochfelder*, in a securities violation case brought under § 10(b) and Rule 10b–5, a plaintiff must allege and prove that the defendants acted with "scienter," being "a mental state embracing an intent to deceive, manipulate, or defraud." *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 961 (5th Cir.1981) (quoting *Ernst & Ernst*, 425 U.S. 185, 193–94, 194 n. 12, 96 S.Ct. 1375, 1381 & n. 12, 47 L.Ed.2d 668 (1976)). In *Ernst & Ernst*, the Supreme Court found "that mere negligence is insufficient to support liability in a private

suit for damages under Rule 10b–5" but left open the question of whether recklessness could satisfy the scienter requirement. *Zonagen*, 267 F.3d at 408; *Broad*, 642 F.2d at 961.

Thus, prior to the passage of the PSLRA, the courts had no consensus on the nature and content of the allegations of scienter required to withstand a motion to dismiss. *Zonagen*, 267 F.3d at 407. This situation was somewhat clarified by the PSLRA, passed by Congress in 1995 over the President's veto, which amended the 1934 Securities Act to provide, in relevant part:

> "In any private action arising under this chapter in which the plaintiff may recover money damages on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2).

*Id.*

The *Zonagen* court noted that, prior to the PSLRA, the rule in the Fifth Circuit allowed a plaintiff alleging a securities violation to "plead facts that merely 'support an inference of fraud,' [but that rule] has been supplanted by the PSLRA's "strong inference" requirement.' We therefore find that in order to survive a motion to dismiss, a plaintiff alleging a section 10(b)/ Rule 10b–5 claim must now plead specific facts giving rise to a 'strong inference' of scienter." *Id.* The *Zonagen* court then pursued a lengthy analysis of what was now required to plead scienter, or " 'the required state of mind' necessary to allege a private securities fraud claim." *Id.* Noting there was no direct guidance on this point in the PSLRA, the court determined that the new statute had not generally

altered the previously determined substantive scienter requirement for claims brought under § 10(b) and Rule 10b–5 of severe recklessness. *Id.* at 408.

In the *Broad v. Rockwell Int'l Corp.* case, which the *Zonagen* court cited with approval, the Fifth Circuit determined scienter could be established by the plaintiff's proving the defendant acted with severe recklessness, and it defined severe recklessness as "limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Broad,* 642 F.2d at 961–62; *Zonagen,* 267 F.3d at 408 (quoting the same). The *Zonagen* court described severe recklessness as "resembl[ing] a slightly lesser species of intentional misconduct." *Zonagen,* 267 F.3d at 408.

The *Zonagen* court then proceeded to determine what sort of facts must be plead to establish a strong inference of either intentional misconduct or severe recklessness, with the court determining that "particularized facts" must be plead, and, although a plaintiff could allege motive or opportunity to support the inference of scienter, such allegations of motive or opportunity by themselves, although previously sufficient, could no longer automatically establish a strong inference of scienter. *Id.* at 412. Thus, "[i]n addition to the requirement that a plaintiff 'state with particularity facts giving rise to a strong inference' of scienter, the PSLRA also requires the plaintiff to identify specifically the alleged misrepresentations and/or misleading omissions":

> In any private action arising under this chapter ... the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts upon which that belief is formed. 15 U.S.C. § 78u–4(b)(2)."

*Id.*

The Fifth Circuit also determined that the PSLRA, "at a minimum, incorporate[d] the standard for pleading fraud under Fed. R.Civ.P. 9(b)" such that a plaintiff "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.* The court additionally stated that, if a complaint does not meet these requirements, "the [district] court shall, on motion of any defendant, dismiss the complaint.'" *Id.* at 412–13 (citing § 78u–4(b)(3)).

Defendants have very thoroughly briefed their grounds for dismissing the various claims Plaintiff has asserted against them. The Court agrees with Defendants' arguments for dismissal and case law cited in support of the grounds for dismissal. There is no need to repeat the extensive arguments Defendants have made, and this Court will only summarize the points.

 First, regarding Plaintiff's claim brought under § 10(b) and Rule 10b–5, Plaintiff has not plead particularized facts sufficient to establish scienter. Pleading motive, opportunity or fees to be earned do not establish scienter. Additionally, as a matter of law, an investor cannot reasonably rely on statements that an IPO will occur. Plaintiff merely states that it could rely upon the statements without citing any authority. A review of the PPM, the Partnership Agreement, and the Subscription Agreement shows that these docu-

ments contain extensive cautionary and qualification language as to the safety of the money invested, i.e., that it all could be lost. The marketing materials presented by Bear Stearns to Wild Brain contain numerous qualifications that the numbers expressed were estimates and dependent upon market conditions and the financial projections of Wild Brain. The alleged statements made by Defendants are not actionable: they are either puffery, were not false when·made, or were not guarantees. Plaintiff merely responds without authority to state it could rely on the statements because they were not puffery or forward looking statements. Plaintiff ignores the fact the statements were usually coupled with cautionary language, requiring application of the bespeaks caution doctrine, which remove the statements from the category of actionable language. Plaintiff interjects another reason for its loss of investment in the Interfase Capital III fund, that Scott Hyten directed money into other, ill-advised investments, defeating the element of proximate cause.

In its response, Plaintiff gave examples of events that show the statements made about the "inevitable IPO of Wild Brain" were false when made or were made with severe recklessness: the IPO of Wild Brain never occurred, Barron never performed some pre-IPO activities, Barron was a college friend of both the managing partner of Interfase Capital III and Wild Brain, Barron lied about her previous successes with IPOs, Barron never invested in Wild Brain, and Barron had repeated telephone conversations with Plaintiff, some of which occurred while Plaintiff was on vacation. The mere fact that market forces likely precluded an IPO offering for Wild Brain in 2000–2001, just as the market for all types of Internet stocks disappeared, does not make Barron's statements regarding hoped-for events to have been severely reckless when made. Plaintiff's

claim under § 10(b) and Rule 10b–5 should be dismissed.

Regarding Plaintiff's other claims against Defendants, the Court finds that Defendants have very adequately briefed and supported their assertions that the these claims should be dismissed: the claim based upon Section 20(a) of the Exchange Act, the common law fraud claim, the claim based upon section 33(A)(2) of the Texas Securities Act, the claim for breach of fiduciary duty, the claim for civil conspiracy, and the claim against Bear Stearns based upon the doctrine of respondeat superior. The Court has extensively set forth above the grounds asserted by Defendants to dismiss each claim, along with the extensive case law citations provided to support each ground for dismissal, Plaintiff's response, and Defendants' reply. The Court will not repeat these extensive arguments. The Court agrees with the Defendants' arguments for dismissing each of the claims listed in the first sentence of this paragraph, and, accordingly, finds these specified claims should be dismissed.

The Court makes no finding on Defendants' assertion that all of Plaintiff's claims are barred by limitations. However, this is not material because the Court has determined that other grounds exist to dismiss the claims stated in the above paragraph against Barron and Bear Stearns. The Court makes no findings on Defendants' assertion that Plaintiff has no claim for lost investment or for negligent misrepresentation, given Plaintiff's response that it has not asserted any such claims against these two Defendants in its Complaint.

## IV. RECOMMENDATION

Based on the foregoing, this Court recommends that the District Court GRANT Defendant Bear, Stearns & Co., Inc. and

Defendant Lisbeth R. Barron's Motion to Dismiss and dismiss all of Plaintiff's claims against these two defendants.

## V. *WARNING*

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battle v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir.1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,* 474 U.S. 140, 150–53, 106 S.Ct. 466, 472–74, 88 L.Ed.2d 435 (1985); *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1428–29 (5th Cir.1996) (en banc).

The Clerk is directed to send a copy of this Report and Recommendation to the parties by certified mail, return receipt requested.

April 10, 2002.