TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00815-CV






Jason Paull, Stacey Paull, Justin Paull and E.H.A.P., Inc./Capitol Resource 


Management, Inc., Robert R. Durkee, Jr. and 


Robert R. Durkee, III, Appellants



v.



Capital Resource Management, Inc., Robert R. Durkee, Jr., and Robert R. Durkee,


III/Jason Paull, Stacey Paull, Justin Paull and E.H.A.P., Inc., Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 96-03158, HONORABLE HUME COFER, JUDGE PRESIDING 






 Jason Paull, Stacey Paull, Justin Paull, and E.H.A.P., Inc. (collectively,
"appellants") appeal the trial court's grant of summary judgment to appellees, Capital Resource
Management, Inc., Robert R. Durkee, Jr., and Robert R. Durkee, III. (1) We will affirm the
summary judgment.


STATEMENT OF FACTS

 This suit arises out of appellants' purchase of a working interest in an oil and gas
waterflood project, the Southwest Lisbon Field Unit (the "Unit"), from appellee Capital Resource
Management, Inc. ("CRM"), a Texas corporation engaged in oil and gas exploration and
development. CRM was formed in 1992 by appellees Robert R. Durkee, III, and his father,
Robert R. Durkee, Jr., both of whom are registered with the State of Texas as professional
engineers. The Durkees are the sole principals and officers of CRM, and Robert Durkee, III, is
its sole employee. CRM and the Durkees (collectively, "appellees") dealt exclusively with Les
Paull ("Paull") during the negotiation of appellants' purchase of working interests in the Unit. 
Paull is the father of appellants Jason, Stacey, and Justin Paull, and president of E.H.A.P., Inc.,
which is owned by his wife, Ellen Paull. E.H.A.P., Inc. is a Texas corporation engaged in the
purchase and sale of oil and gas interests and other business ventures. Paull has represented the
interests of all the appellants throughout the litigation.

 Paull became acquainted with appellees in 1992, when CRM acquired office space
next door to Paull's Austin office. Some time after they met, Paull expressed his interest in oil
and gas investments to Robert Durkee, III ("Durkee"). (2) In December 1993 or January 1994,
Durkee informed Paull of a potential investment involving waterflooding (3) the Unit and, at Paull's
request, provided Paull with information regarding the Unit. Durkee also prepared the "SW
Lisbon Field Summary" ("Field Summary"), which consists of documents that analyze projected
productivity, revenues, and profits from the waterflood project. Projections were based on
economic forecasts concerning costs and price of oil, and on the analysis of oil quality and
production of an analogous field. (4) Paull had access to and visited CRM's offices to review
materials. CRM purchased the Unit in February 1994. On March 20, 1994, Paull, as agent for
appellant E.H.A.P., Inc., and the other appellants, relying on Paull's recommendation, purchased
a 7.6924% working interest in the Unit. Of the remaining 92.3% working interest, approximately
42.3% was sold to two individual investors and a corporation introduced to CRM by Paull, and
25% was assigned to C&M Operating ("C&M"), a Louisiana corporation. (5)

 Although oil production increased dramatically during the initial phases of the
project, by 1996 oil production declined and the Unit became unprofitable. Appellants filed suit
against appellees after the Unit failed to produce oil in the amounts predicted. They alleged
violations of the Securities Act (6) through the sale of unregistered securities, the sale of securities
by an unlicensed agent, and securities fraud; they also alleged common law fraud, negligent
misrepresentation, breach of oral contract, and breach of written contract. The trial court granted
summary judgment for appellees on all causes of action except breach of written contract.
Appellees then amended their answer to include a counterclaim for attorney's fees. The case
proceeded to a bench trial and the trial court rendered judgment for appellants on the breach of
contract claim and against appellees on the counterclaim for attorney's fees. Appellants now
appeal the summary judgment rendered against them on the Securities Act violations, common law
fraud, and negligent misrepresentation.


STANDARD OF REVIEW

 The standards for reviewing a motion for summary judgment are well established:
(1) the movant bears the burden of showing that no genuine issue of material fact exists and that
it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material
fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as
true; and (3) every reasonable inference must be indulged in favor of the nonmovant, with any
doubts resolved in its favor. See Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). The function of summary judgment is not to deprive litigants of the right to trial
by jury, but to eliminate patently unmeritorious claims and defenses. See Swilley v. Hughes, 488
S.W.2d 64, 68 (Tex. 1972).


DISCUSSION

 Securities sold in the State of Texas must be registered. See Tex. Rev. Civ. Stat.
Ann. art. 581-7(A)(1) (West Supp. 1999). An interest in an oil and gas lease is defined as a
security by the Securities Act; however, the statute exempts certain oil and gas securities from
registration. See Tex. Rev. Civ. Stat. Ann. art. 581-4(A), -5(Q) (West Supp. 1999). The oil and
gas securities at issue in this case were not registered, and appellants contend that a fact question
exists concerning whether the securities fit within the statutory exemption. We disagree. 

 Article 581-5(Q) of the Securities Act exempts interests in oil and gas leases from
registration if two tests are met: (1) the total number of interests sold does not exceed thirty-five
within a twelve month period; and (2) no use is made of advertisement or public solicitation. See
Tex. Rev. Civ. Stat. Ann. art. 581-5(Q) (West Supp. 1999). Appellants agree that fewer than
thirty-five interests were sold; therefore, the only issue is whether appellees utilized
advertisements or public solicitation in the sale of those interests. 

 Appellants contend that a question of fact exists with regard to this issue because
interests were marketed to the four of them, the three Florida investors, and Saratoga Resources. (7) 
The record establishes, however, through Paull's deposition, that: (1) CRM presented the
investment opportunity to Paull because Paull solicited information regarding low risk oil and gas
investments from Durkee; (2) appellants relied exclusively on Paull's advice in deciding whether
to invest in the Unit; (8) and (3) Paull sent the Florida investors information regarding the Unit. 
Further, Durkee testified that he contacted Saratoga Resources directly, and appellants did not
present any evidence to dispute this. The summary judgment record contains no evidence that
appellees used advertising or solicited the public to attract investments in the Unit; to the contrary,
the evidence conclusively shows that the investments were the result of "personal and private
dealings" between the parties. See Nicholas v. Crocker, 687 S.W.2d 365, 368-69 (Tex.
App.--Tyler 1984, writ ref'd n.r.e.) (sale of oil and gas interests were result of personal and
private dealings when investor sought out investment opportunity and other investors relied on his
judgment in making investment decisions). Because the oil and gas interests sold to appellants
were exempt from registration as a matter of law, we affirm the summary judgment on the
registration issue.

 Appellants also allege that Durkee violated the licensing requirements of the
Securities Act. Article 581-12(A) requires any person or entity that sells securities to be
registered, and Article 581-5(Q) requires agents who sell exempt oil and gas interests to be
registered in accordance with the Securities Act. See Tex. Rev. Civ. Stat. Ann. art. 581-12(A),
-5(Q) (West Supp. 1999). It is undisputed that Durkee is not licensed to sell securities. 
Appellants contend that Durkee, by selling oil and gas securities to appellants as an agent for
CRM, violated Article 581-5(Q) of the Securities Act.

 In their brief, appellants fail to address Article 581-12(B), which allows the State
Securities Board (the "Board") to "adopt rules and regulations exempting certain classes of
persons from the dealer and agent registration requirements . . . ." Tex. Rev. Civ. Stat. Ann. art.
581-12(B) (West Supp. 1999). The Board's regulations provide an exemption for employees who
aid the owner of an oil and gas lease in selling the oil and gas interests if certain conditions are
met. See 7 Tex. Admin. Code § 109.14(b) (West 1998). First, the employee must not have been
"hired for the purpose of offering or selling such securities"; second, the employee's activity
involving the offer and sale of the securities must be incidental to his bona-fide primary work
duties; and finally, the employee must not receive compensation for the sale of the securities. See
id. § 109.14(b)(1)-(3). Appellees presented summary judgment evidence that established that
Durkee is an engineer and the president of CRM, any sale of securities on behalf of CRM is
incidental to his bona-fide duties as an engineer and officer of CRM, and his compensation is
based on his performance as an engineer and officer, not on the sale of securities. Appellants
presented no summary judgment evidence to counter appellees' proof. Because Durkee met the
conditions set forth in section 109.14(b)(1)-(3), he was exempt from the Securities Act licensing
requirements as a matter of law. The grant of summary judgment on the licensing issue is
affirmed.

 Appellants' allegation of securities fraud hinges on alleged misrepresentations
appellees made to appellants. Article 581-33 of the Securities Act provides, in relevant part: "A
person who offers or sells a security . . . by means of an untrue statement of a material fact . . .
is liable to the person buying the security from him . . . ." Tex. Rev. Civ. Stat. Ann. art. 581-33(A)(2) (West Supp. 1999). Appellants complain of two allegedly untrue statements of material
fact: (1) Durkee's characterization of the investment as "low risk"; and (2) Durkee's
representation in the Field Summary that the Unit could reasonably be expected to produce large
revenues for a long time. Appellees argue that these statements merely reflected Durkee's
opinions and cannot form the basis for fraud. See Transport Ins. Co. v. Faircloth, 898 S.W.2d
269, 276 (Tex. 1995) (stating that a pure expression of opinion, including opinion regarding value,
will not support an action for fraud). To determine whether these representations were statements
of fact or of opinion, we must review them in the context in which each statement was made. See
id. 

 At the time Paull became acquainted with Durkee, Paull's experience with
investments spanned an eighteen to twenty-year period, and he had invested in a number of oil and
gas projects during that period. Paull testified in his deposition that some time after they met, he
expressed interest in a low risk oil and gas project to Durkee; in Paull's estimation, a low risk
project in the oil and gas industry is one that has better than a fifty to sixty-percent chance of
meeting the projected revenues. According to Paull's deposition, Durkee called Paull in early
1994, while Paull was working and living part-time in Los Angeles, and told Paull that he "had
a very low risk waterflood project that would fit what he thought we needed." Paull asserts that
Durkee verbally guaranteed results from the waterflood project with the statement, "I can
guarantee you this is one of the lowest risk projects I have ever worked on myself." Appellees
argue that in this context, Durkee's statements merely expressed his opinion regarding the relative
risk of the Unit project as compared to his past projects.

 We agree with appellees. Durkee's first statement, that he had a project he thought
would fit what Paull needed, clearly indicates that Durkee had a belief, or opinion, as to the
compatibility between this project and Paull's needs. His second statement, guaranteeing that this
was one of the lowest risk projects he had ever worked on himself, indicates Durkee's belief that
this project compared favorably with those he has had in the past. These statements may also be
considered "puffing," or dealers' talk, and statements made in this context generally do not
amount to actionable misrepresentations. See Prudential Ins. Co. of Am. v. Jefferson Assocs.,
Ltd., 896 S.W.2d 156, 163 (Tex. 1995).

 Appellants also complain of alleged misrepresentations in the Field Summary
Durkee developed for Paull. To develop the Field Summary, Durkee gathered information about
the Unit such as past production, production in an analogous field, field inspection, cost forecasts,
and forecasts concerning future prices of oil and gas. He then prepared the Field Summary, which 
consists of documents estimating such things as productivity, length of time for payout, and rate
of return. 

 We hold that the Field Summary expressed Durkee's opinion and was not an
actionable statement of fact. The future price of oil and gas and the estimated return on capital
are predictive statements. See Porter v. Shearson Lehman Bros. Inc., 802 F. Supp. 41, 60 (S.D.
Tex. 1992) (finding that subjective projections of future price of oil and gas and estimated return
on capital are not material statements as a matter of law). (9) Furthermore, Paull understood the
predictive nature of the Field Summary. In his deposition, Paull referred to the Field Summary
as a "pro forma." To develop a pro forma, one gathers information available regarding the
investment and, according to Paull's deposition testimony, "you make projections based on what
you hope that [the investment] will do in the future." The Field Summary was Durkee's
projection, or opinion, of what he hoped the Unit would do in the future.

 Establishing that these two statements generally fit within the opinion category,
however, is not the end of our inquiry. The supreme court has developed the following exceptions
to the general rule that expressions of opinion cannot support a fraud claim: (1) an opinion may
support a fraud claim if the speaker knows the statement is false; (2) an expression of an opinion
as to the happening of a future event may constitute fraud; and (3) an opinion based on past or
present facts may support an action for fraud. See Trenholm v. Ratcliff, 646 S.W.2d 927, 930
(Tex. 1983). Relevant circumstances to consider in evaluating statements in the latter two
categories are the statement's specificity and the comparative levels of the speaker's and the
hearer's knowledge. See Faircloth, 898 S.W.2d at 276; McCollum v. P/S Investments, Ltd., 764
S.W.2d 252, 254 (Tex. App.--Dallas 1988, writ denied). When a speaker purports to have
special knowledge of the facts, or does have superior knowledge of the facts--for example, when
the facts underlying the opinion are not equally available to both parties--a party may maintain
a fraud action. See Trenholm, 646 S.W.2d at 930; McCollum, 764 S.W.2d at 254.

 Because Durkee based his opinions regarding the low risk nature of the investment
and the Field Summary on future events such as costs, price of oil and gas, and return on the
investment, as well as present and past events such as past production, production of analogous
fields, and field inspections, we must evaluate the relative knowledge of the parties to determine
if the opinion may constitute a basis for fraud. 

 The record establishes that Durkee gave Paull information regarding the Unit and
that Paull had access to and visited CRM's offices. Appellants argue that Durkee had far greater
knowledge than Paull concerning the Unit and the projections in the Field Summary because
Durkee is an engineer, and the evaluation of a waterflood project is uniquely within the domain
of engineers. Appellants confuse "knowledge" with "expertise." The court in McCollum
distinguished superior expertise from superior knowledge, stressing that the issue, in this context,
is knowledge. See McCollum, 764 S.W.2d at 255. In that case, the defendant based his appraisal
"on his view of the property and information available to the public." Id. The court found that
"[e]ven assuming that [defendant's] ability to value property surpassed [plaintiff's], the equal
access each had to all pertinent information prohibits [plaintiff] from claiming he was defrauded
by [defendant's] opinion." Id. 

 Appellants claim that Durkee did not give Paull everything Durkee reviewed in
preparing the Field Summary, such as the raw data. The record shows that Durkee obtained the
records regarding old production through a repository for public information of oil and gas
information. (10) For purposes of summary judgment, we accept as true Paull's assertion that he did
not have the expertise to evaluate the public information regarding the Unit on his own. The fact
remains, however, that he and Durkee had equal access to the knowledge. Thus, the information
forming the basis for Durkee's opinions was equally available to both Durkee and Paull; therefore,
Durkee's statements are not actionable misrepresentations.

 Appellants point us to law developed in the Fifth Circuit regarding predictive
statements like the Field Summary. The Fifth Circuit has held, in the securities context, that
predictive statements contain at least three factual assertions that may be actionable: (1) the
speaker believes the statement is accurate; (2) there is a reasonable basis for that belief; and (3)
the speaker is unaware of any undisclosed facts that would tend to seriously undermine the
accuracy of the statement. Rubinstein v. Collins, 20 F.3d 160, 166 (5th Cir. 1994). Because this
test differs from the opinion analysis we employed above, we will review the Field Summary
under Rubinstein as well. 

 Appellants claim through the affidavit of their oil and gas expert, Gary Youngren,
that there was no reasonable basis for the beliefs Durkee expressed regarding Unit production and
revenues in the Field Summary. Youngren states that he relies on "certain documents" attached
to his affidavit to conclude that Unit production could not possibly have met the economic
performance reflected in Durkee's Field Summary. Youngren does not identify, however, which
of the more than four hundred documents attached to his affidavit led him to this conclusion. 
Further, appellants do not point us to evidence that supports Youngren's conclusions. (11)
 An
appellant has the duty to show that the record supports his contentions and to point to the
supporting places in the record. See Tex. R. App. P. 38.1(h). We are not required to search a
voluminous record, here being four hundred pages of oil and gas engineering documents, with no
guidance from appellants, to see if an issue of material fact was raised by the affidavit. (12) See Hall
v. Stephenson, 919 S.W.2d 454, 467 (Tex. App.--Fort Worth 1996, writ denied). 

 Because Paull and Durkee had equal access to the knowledge on which Durkee
relied to prepare the Field Summary and form his opinion that the investment was low risk, and
in the absence of appellants directing us to proof that the Field Summary had no reasonable basis,
we hold that there were no factual misrepresentations as a matter of law. The trial court correctly
granted appellees summary judgment on appellants' securities fraud claim. 

 A factual misrepresentation is an essential element to appellants' common law fraud
and negligent misrepresentation causes of action. Appellees demonstrated that they were entitled
to summary judgment and the record contains no evidence that Durkee made a factual
misrepresentation to appellants; accordingly, we will affirm the grant of summary judgment on
those two claims as well. 




CONCLUSION

 We hold that the trial court correctly granted appellees summary judgment on all
five of appellants' claims. The order of the trial court is affirmed.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: March 4, 1999

Publish
1. Capital Resource Management, Inc., Robert R. Durkee, Jr., and Robert R. Durkee, III, filed
a separate notice of appeal and thus are styled as cross-appellants; however, they raised no
independent issues for appellate review. Consequently, we will refer to them solely in their
capacity as appellees.
2. Paull dealt almost exclusively with Robert Durkee, III, throughout this transaction and
subsequent litigation. 
3. A waterflood is a process in which water is injected into an oil reservoir to push or sweep
oil towards producing wells. It is a method for enhancing oil recovery from an existing reservoir. 
4. Durkee explained in his deposition that an analogous field is one that is geographically
similar and in close proximity to the field in question.
5. C&M assigned its 25% working interest back to CRM July 1, 1994, and CRM sold a 25%
working interest to Saratoga Resources on September 1, 1994.
6. See Tex. Rev. Civ. Stat. Ann. arts. 581-1 through 581-42 (West 1964 & Supp. 1999).
7. Appellants do not contend that C&M purchased its assignment through CRM's alleged public
solicitation.
8. Paull stated in his deposition that it was accurate to say that E.H.A.P., Inc. and his children
invested in the Unit because Paull told them to.
9. Decisions of the federal courts interpreting the Federal Securities Act may be reliable guides
for interpreting the application of the comparable state provision. See First Mun. Leasing v.
Blankenship, Potts, Aikman and Stuart, 648 S.W.2d 410, 414 (Tex. App.--Dallas 1983, writ ref'd
n.r.e.).
10. Furthermore, Paull testified in his deposition that in the early 1980s, while working for an
oil and gas company, he evaluated property to determine if it was feasible that the production
would meet the projections of the pro forma prepared for that property. 
11. Appellants reference Durkee's deposition testimony to support their contention that the
analogous field Durkee used to project production rates had a "cut" of 5% oil to 95% water, while
the Unit had only a cut of 3% oil to 97% water. They further allege, without reference to the
record, that Unit production in the 1980s showed the Unit had only a 3% oil cut.

 Durkee did testify that the analogous field to the northeast had a 5% cut, and that he
anticipated the Unit would have the same cut. The fact that his prediction turned out to be
incorrect, however, is not evidence that his prediction had no reasonable basis. At oral argument,
appellees pointed to production ledgers attached to Youngren's affidavit that showed a 10% cut
in the analogous field. Appellees also pointed out that appellants attached production ledgers to
Youngren's affidavit that showed the Unit producing at approximately an 8.5% cut in February
1981. Appellants did not point us to any evidence among Youngren's attachments or in the record
that demonstrate the Unit had only a 3% cut; consequently, there is no evidence to support their
contention that Durkee's Field Summary had no reasonable basis.

12. Furthermore, appellants' failure to point to any evidence supporting their contention that
Durkee misrepresented the Unit's production capabilities in the Field Summary renders appellants'
reliance on Anderson v. Vinson Exploration, Inc., 832 S.W.2d 657 (Tex. App.--El Paso 1992,
writ denied) inapposite. In Anderson, the appellants complained, as here, that the appellees
mischaracterized the investment as "low risk" and misrepresented the production capabilities of
the investment. The appellants in Anderson, however, put forth evidence that the appellees knew
there were dry wells close to the lease, that the appellees had drilled a dry hole close to the lease,
that the appellees had plugged all the wells in the analogous field, and that the lease had been
rejected by numerous investors. As we have said, appellants have not pointed to any evidence in
the record that reveals that Durkee's predictive statements were false or had no reasonable basis.


 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: March 4, 1999

Publish
1. Capital Resource Management, Inc., Robert R. Durkee, Jr., and Robert R. Durkee, III, filed
a separate notice of appeal and thus are styled as cross-appellants; however, they raised no
independent issues for appellate review. Consequently, we will refer to them solely in their
capacity as appellees.
2. Paull dealt almost exclusively with Robert Durkee, III, throughout this transaction and
subsequent litigation. 
3. A waterflood is a process in which water is injected into an oil reservoir to push or sweep
oil towards producing wells. It is a method for enhancing oil recovery from an existing reservoir. 
4. Durkee explained in his deposition that an analogous field is one that is geographically
similar and in close proximity to the field in question.
5. C&M assigned its 25% working interest back to CRM July 1, 1994, and CRM sold a 25%
working interest to Sara