COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| BLAND HOLLAND, | § | |
| Appellant, | § | |
| | § | No. 08-08-00311-CV |
| v. | § | Appeal from |
| J. CLEO THOMPSON a/k/a | § | |
| JAMES CLEO THOMPSON, JR., | § | 112th District Court |
| INDIVIDUALLY AND AS | | |
| EXECUTOR OF THE ESTATE OF | § | of Crockett County, Texas |
| JAMES CLEO THOMPSON, AND | | |
| J. CLEO THOMPSON AND | § | (TC # 06-04-06852-CV) |
| JAMES CLEO THOMPSON, JR., | | |
| A PARTNERSHIP, | § | |
| Appellees. | § | |

**O P I N I O N**

This appeal stems from the sale of a mineral interest in 1998. Strapped for cash, Appellant Bland Holland sold his interest for $9,027.27. Subsequent field development netted the purchasers revenues of hundreds of thousands of dollars. Simply stated, we must decide who knew what when. The trial court entered summary judgment in favor of the purchasers--James Cleo Thompson, Jr., individually and as executor of the estate of J. Cleo Thompson; J. Cleo Thompson and James Cleo Thompson Jr., a partnership; and J. Cleo Thompson and James Cleo Thompson, Jr., L.P., collectively Thompson.[1] For the reasons that follow, we affirm on limitations grounds.

_____

[1] J. Cleo Thompson, deceased, was the father of James Cleo Thompson, Jr. The two were in partnership together when they first acquired the Bailey leases in the late 1960's. When the father died in 1975, Thompson Jr. operated the leases through a partnership known as J. Cleo Thomspon and James Cleo Thompson, Jr., a Partnership. The entity later became known as J. Cleo Thompson and James Cleo Thompson, Jr., L.P. The latter entity was the current operator on the leases.

## FACTUAL BACKGROUND

### Holland Inherits the Mineral Interest

Holland's family owned mineral interests in the Bailey Estate Trust for decades. When his mother passed away in 1996, Holland inherited a 1/48th beneficial interest in minerals held in the Bailey Estate Trust. The trustees of the Bailey Estate Trust hold title to and administer the mineral interests located in Crockett County.

### The Role of J. Cleo Thompson, Jr.

J. Cleo Thompson, Jr. acquired a ranch in Crockett County in 1967. In 1969 or 1970, he purchased the majority working interest in the oil and gas leases in the Bailey Estate Trust and became the operator. By the time of the events giving rise to this litigation, Thompson had controlled production on the Bailey leases for 28 years, making all decisions regarding drilling and production. Thompson purportedly held himself out as the person the local residents could trust in oil and gas matters.

### Negotiating the Sale

In 1998, Holland was living in Florida and operating a bed and breakfast establishment. He became embroiled in a lawsuit concerning the inn and learned that his cousin[2] had sold mineral interests to Thompson. In September 1998, Holland wrote to Thompson, asking if he would be interested in purchasing Holland's interest. Thompson and Holland exchanged a number of telephone calls and emails.

Thompson offered Holland $9,000 based on a standard formula of production from the past year times four. He told Holland that the current wells were "old" and "playing out." Holland

---

[2] Bland Holland and Martin Brock Jones, Jr. are cousins. We have issued this same date an opinion in a lawsuit filed by Jones against the Thompson defendants relating to his sale of a mineral interest in the Bailey Estate Trust.

admitted that he did not believe this to be untrue. Thompson represented that there was "no reason" to begin new production and that he did not "foresee" any. Holland later believed this to be a misrepresentation based upon what new wells were producing as of the date of his deposition in 2007. Thompson also agreed to purchase the mineral interest as a favor although he would "probably never see this money back." Thompson's assistant, Mary Lou Wright, also emailed Holland, telling him there would be no future production and that the field was "drained" or "used up."[3] Thompson opined that $9,000 was a fair value for Holland's mineral interest and that a fair price would be based only on current production because "there was nothing else there."

As was required by the trust agreement of the Bailey Estate Trust, Holland first offered his mineral interest to the trustees. When they rejected the tender, Holland inquired whether his siblings were interested. Holland ultimately sold Thompson his interest on November 25, 1998 for $9,027.27.

### 1997 Texas Railroad Commission Filings

In July 1997, Thompson applied to amend the field rules for the Ozona NE. (Canyon 7520) Field (67998 500), Crockett County, Texas, to amend the well spacing of 1320'/2640' to 660'/1320'. The application was prepared by Thompson's petroleum engineer, Sol Smith. The purpose of the application was to "afford greater flexibility in locating wells on the most favorable geological location; thus recovering greater reserves and preventing waste." Smith also averred that, "[d]ue to the event of 3-D geological surveys, the best areas to drill are shown." Proper notice was given for a hearing on July 30, 1997. The application was unprotested and the technical hearings examiner recommended approval. In her findings of fact, the examiner recited that there were 68 producing

---

[3] During his deposition, Holland characterized Wright as "the messenger." He did not believe that she told him something that was false.

wells in the field, 56 of which were operated by Thompson. Of Thompson's 56 wells, 29 were Bailey wells.[4] In Findings of Fact 4 and 5, the examiner found that:

> 4. Thompson plans to drill at least 15 wells under the optional 160 acre optional rule. Many of the proposed locations, identified from 3-D seismic, would require exceptions to Rule 37 under the existing spacing rules.[5]

> 5. The proposed spacing rule will allow additional wells to be drilled without the time and additional cost associated with obtaining rule 37 exceptions.

In Conclusion of Law 3, she found that amending the field rules would provide for effective and efficient field development. The Commission signed a final order approving the application on August 26, and it became final on September 19, 1997. Despite the changes in the permit and the abundant reserves, Thompson did not drill any new wells.

### Development of the Reserves

In November 2003, Thompson was contacted by Approach Resources, Inc. about taking a farm out agreement on leases held by Thompson. Beginning in 2004, Approach drilled numerous wells under the farm out agreement, beginning on the Bailey leases.[6] Charles Graham, a petroleum engineer, explained in his affidavit that the Bailey leases were situated in the Ozona NE. (Canyon 7520) Field and were producing natural gas in paying quantities. He offered his opinions on the extent of undeveloped hydrocarbon reserves in the Canyon sand reservoirs underlying the Bailey

---

[4] We have obtained these calculations from the July 1997 Gas Proration Schedule which Thompson attached as an exhibit to the application. According to the affidavit of one of the petroleum engineering witnesses, proration schedules identify every well in each oil and gas field designated by the Commission.

[5] Thompson testified that the 3-D geological surveys were not performed until after the farm out agreement with Approach. He disputed Smith's statement that "[d]ue to the event of 3-D geological surveys, the best areas to drill are shown." He also denied any plan to drill fifteen wells. Thompson's chief financial officer, Cliff Milford, thought the application contained a simple grammatical error: it should have read "[d]ue to the *advent of*" rather than "[d]ue to the *event of*" 3-D geological surveys. Milford also took issue with the examiner's finding that Thompson was going to drill fifteen wells. "There was no plan to drill."

[6] Thompson testified that when Approach started drilling, they started on the Bailey and Clayton leases. His chief financial officer, Cliff Milford, disagreed.

leases. Technical evidence revealed that the existing wells could not recover the reserves underlying the proration units assigned. Documents on file with the Commission supported his conclusions as to the undeveloped reserves. But Thompson did not drill on the Bailey leases in 1998, 1999, 2000, 2001, 2002 or 2003. In Graham's opinion, Thompson knew of significant undeveloped hydrocarbon reserves under the Bailey leases prior to 1998.

Thompson admitted that he netted $438,319.23 from Holland's interest between October 1998 and January 2008. Thompson continues to collect revenues from Holland's property. Graham calculated the present value of Holland's interest at $340,235.

## The Lawsuit

Holland filed suit against Thompson in April 2006 alleging breach of fiduciary duty[7], common law fraud (fraudulent misrepresentation and/or fraudulent inducement); fraud by non-disclosure; fraud under Texas Business & Commerce Code, Section 27.01; money had and/or received; and constructive fraud. Thompson filed a motion for traditional and no-evidence summary judgments alleging multiple grounds, including that the suit was barred by limitations. The trial court granted the motion without specifying grounds.

## LIMITATIONS

Holland challenges the summary judgment in eight points of error. With regard to the statute of limitations, he contends that both the discovery rule and the doctrine of fraudulent concealment tolled limitations and that Thompson failed to prove when he knew or should have known of his injuries.

### Standard of Review

The standard of review for traditional summary judgment under TEX.R.CIV.P. 166a(c) is well

---

[7] Holland later abandoned this theory.

established. *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). The moving party carries the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005); *Duran v. Furr's Supermarkets, Inc.*, 921 S.W.2d 778, 784 (Tex.App.--El Paso 1996, writ denied). Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed issue of material fact. *Fort Worth Osteopathic Hospital, Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Duran*, 921 S.W.2d at 784. All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. *Id*. A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action or if it conclusively establishes all elements of an affirmative defense. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). Once the defendant establishes a right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact. *Scown v. Neie*, 225 S.W.3d 303, 307 (Tex.App.--El Paso 2006, pet. denied). When the trial court's judgment does not specify the ground, or grounds, upon which it relied for its ruling, the judgment must be affirmed if any of the theories advanced are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Fertic v. Spencer*, 247 S.W.3d 242, 249 (Tex.App.--El Paso 2007, pet. denied).

When reviewing a no-evidence motion for summary judgment, we must disregard all contrary evidence and inferences, and review the evidence in the light most favorable to the non-movant. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). Once the moving party specifically states the elements as to which there is no evidence, the burden shifts to the non-movant to produce summary judgment evidence raising a genuine issue of material fact regarding each element challenged. *Gray v. Woodville Health Care Center*, 225 S.W.3d 613, 616 (Tex.App.--El

Paso 2006, pet. denied). If the non-movant produces more than a scintilla of evidence regarding the challenged element, a genuine issue of material fact is raised. *Id*. Less than a scintilla of evidence exists if the evidence is so weak as to create no more than a mere surmise or suspicion. *King Ranch, Inc.*, 118 S.W.3d at 751. However, when the evidence rises to a level that enables reasonable minds to differ in their conclusions, then more than a scintilla of evidence exists. *Id*. If the non-movant does not produce more than a scintilla of evidence to raise a genuine issue of material fact, the trial court "must" grant the motion. *Larned v. Gateway East, Inc.*, 186 S.W.3d 597, 601 (Tex.App.--El Paso 2006, no pet.); *see also* TEX.R.CIV.P. 166a(i).

A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. *University of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000); *KPMG Peat Marwick v. Harrison County Housing Finance Corporation*, 988 S.W.2d 746, 748 (Tex. 1999). The defendant must (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pled or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the nature of its injury. *KPMG Peat Marwick*, 988 S.W.2d at 748. If the movant establishes that the statute of limitations bars the action, the non-movant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations. *Id*.

### The Parties' Positions

Holland's causes of action against Thompson stemmed from claims of fraud. The longest limitations period afforded to any of his claims is four years. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 16.004 (Vernon 2002). Ordinarily, the statute of limitations begins to run when a particular cause of action accrues. *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996); *Fraga v. Drake*, 276 S.W.3d 55

(Tex.App.--El Paso 2008, no pet.).  A cause of action generally accrues when a wrongful act causes a legal injury regardless of when the plaintiff discovers the injury or if all resulting damages have not yet occurred.  *Childs v. Haussecker*, 974 S.W.2d 31, 36 (Tex. 1998).  Thompson argues that the legal injury of which Holland complains is the sale of the mineral interest.  He maintains he conclusively established that Holland's claims all accrued no later than the date of sale--November 25, 1998--such that the April 2006 lawsuit was barred by limitations.  Holland counters that both the discovery rule and the doctrine of fraudulent concealment deferred the accrual of his causes of action until July of 2004, when Approach Resources Inc. began producing large quantities of minerals on the property.

### The Discovery Rule

In those rare cases when the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable, the Texas Supreme Court applies a judicially crafted exception to the general rule of accrual, known as the discovery rule.  *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996).  Under this rule, a cause of action does not accrue until a plaintiff knows or, through the exercise of reasonable care and diligence, should have known of the wrongful act and resulting injury.  *S.V.*, 933 S.W.2d at 4, *citing Trinity River Auth. v. URS Consultants, Inc.*, 889 S.W.2d 259, 262 (Tex. 1994).  Once these requirements are satisfied, limitations commence even if the plaintiff does not know the exact identity of the wrongdoer.  *See, e.g., Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 344 n.3 (Tex. 1992); *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990).

Thompson argues that the discovery rule does not apply to this lawsuit because fraud claims are governed by the separate and distinct doctrine of fraudulent concealment.  *S.V.*, 933 S.W.3d at 4; *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 736 (Tex. 2001).  In response, Holland

directs us to *Murphy v. Campbell* to support its argument that the discovery rule applies to its fraud claims. 964 S.W.2d 265, 270 (Tex. 1997). In *Murphy*, the court stated:

> We have not applied [the legal injury] rule without exception, however, and have sometimes held that an action does not accrue until the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury. *S.V.*, 933 S.W.2d at 4. This exception, which we call the 'discovery rule', applies in cases of fraud and fraudulent concealment, and in other cases in which 'the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable.' *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996); *S.V.*, 933 S.W.2d at 6.

*Id*. at 270. The Fourth Court of Appeals followed *Murphy* in *BP America Production Co. v. Marshall*, 288 S.W.3d 430, 452 (Tex.App.--San Antonio 2008, pet. filed). We agree with Holland that the holding in *Wagner* does not expressly overrule the holding in *Murphy*.

Thompson had the burden to prove as a matter of law that there is no genuine issue of material fact about when Holland discovered, or in the exercise of reasonable diligence should have discovered, the nature of the injury. *KPMG Peat Marwick*, 988 S.W.2d at 748. If Thompson established that the statute of limitations bars the action, then Holland was required to adduce summary judgment proof raising a fact issue in avoidance. *Id*.

The discovery rule only applies when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable. *Computer Assocs. Int'l, Inc.*, 918 S.W.2d at 456. An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence. *S.V.*, 933 S.W.2d at 7. "Inherently undiscoverable" does not mean that a particular plaintiff did not discover his or her particular injury within the applicable limitations period. *Id*. Instead, we determine whether an injury is inherently undiscoverable on a categorical basis because such an approach "brings predictability and consistency to the jurisprudence." *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 122 (Tex. 2001), *citing*

*S.V. v. R.V.*, 933 S.W.2d at 6; *see also HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998).

In *HECI*, the plaintiffs were members of the Neel family who owned royalty interests under an oil and gas lease. 982 S.W.2d 881, 884 (Tex. 1998). The lessee and operator, HECI Exploration Company, discovered that AOP, a producer on an adjoining lease, had damaged the common reservoir by overproduction. *Id*. HECI sued AOP in 1988, and obtained monetary and injunctive relief in the trial court. *Id*. HECI and AOP eventually settled the suit and filed a release of judgment. *Id*. The Neels sued HECI in 1993, more than four years after damage to the reservoir had occurred. *Id*. Among other things, they alleged that HECI violated an implied covenant to notify them of the need to sue AOP. The court assumed without deciding that such an implied covenant exists, but held that the statute of limitations barred the claim. *Id*. at 888.

> As owners of an interest in the mineral estate, the Neels had some obligation to exercise reasonable diligence in protecting their interests. This includes exercising reasonable diligence in determining whether adjoining operators have inflicted damage. Royalty owners cannot be oblivious to the existence of other operators in the area or the existence of a common reservoir. In some cases, wells visible on neighboring properties may put royalty owners on inquiry. In any event, a royalty owner should determine whether a common reservoir underlies its lease because it knows or should know that, when there are other wells drilled in the reservoir, there is the potential for drainage or damage to the reservoir.

*Id*. at 886. The court emphasized that several sources of information about the existence of a common reservoir and operations within it were available to the royalty owners, including Texas Railroad Commission and lessee records. *Id*. at 886-87. The court held that because damage to the common reservoir was not inherently undiscoverable, the lessee's failure to notify the Neels of their potential claims did not toll limitations. *Id*. at 887.

The court applied *HECI* in *Wagner*, 58 S.W.3d at 732. There, royalty owners brought claims against a lessee for the underpayment of royalties as a result of the lessee's allegedly improper

post-production charges that appeared on royalty statements provided to the owners. *Id*. at 736-37. In determining the applicability of the discovery rule, the supreme court noted that royalty owners have some obligation to exercise reasonable diligence in protecting their interests. This includes the need to exercise due diligence in enforcing contractual rights, in determining whether charges are proper and reasonable, and in determining whether to perform additional investigation to protect their interests. *Id*. at 735-36. Royalty owners may seek information necessary to assess the propriety of royalty calculations from the lessee and other sources. *Id*. at 737. They could have sought information about the improper post-production charges from the lessee and from the gas purchasers. *Id*. Because the underpayments could have been discovered with the exercise of reasonable diligence, the royalty owners' injury was not inherently undiscoverable and, thus, the discovery rule did not apply. *Id*.

The record here contains the affidavits of two petroleum engineers. Tim Smith explained that when analyzing and evaluating mineral interests, petroleum engineers often refer to and rely on information that is commercially available, including the Texas Railroad Commission records. The types of information available from the Commission in 1998 included its Mapping Information Management System (MIMS) and associated quad reports, potential files, hearing files, proration schedules, production information, and in some cases well logs. The affidavit of Charles Graham opined that Commission files in existence prior to 1998 revealed that Thompson should have already engaged in additional development of the Bailey leases. Even a cursory review of the 1997 application would have revealed the possibility that significant reserves existed on the Bailey leases in the Ozona NE. (Canyon 7520) Field because the Gas Proration Schedule listed them. And regardless of whether Thompson later denied that he planned to drill fifteen wells, a prudent mineral interest owner would certainly have reason to inquire about future production based on Sol Smith's

representations in the application.  Because Holland's injury was not inherently undiscoverable, the discovery rule does not toll limitations.[8]

*Fraudulent Concealment*

Holland next contends that he raised multiple material issues of fact as to the elements of the fraudulent concealment doctrine.  He claims that Thompson gave him false information concerning the status of the undeveloped reserves and potential for future production.  Specifically, Holland was told the field was "played out" and that no further production was likely to occur.  He also maintains that once Thompson made a partial disclosure, he was obligated to fully disclose the information available to him.

Fraudulent concealment  works to estop a defendant from asserting limitations as a defense because "a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run."  *S.V.*, 933 S.W.2d at 6.  Fraudulent concealment tolls the statute of limitations until the injured party, using reasonable diligence, discovered or should have discovered the injury.  *KPMG Peat Marwick*, 988 S.W.2d at 750.  The elements of fraudulent concealment  are (1) the existence of the underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception.  *Glover v. Union Pacific Railroad Co.*, 187 S.W.3d 201, 217 (Tex.App.--Texarkana 2006, pet. denied); *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 439 (Tex.App.--Fort Worth 1997, pet. denied).  A party asserting fraudulent concealment  as an affirmative defense to the statute of limitations has the burden to raise it in response to the summary judgment motion and to come forward with summary judgment evidence raising a fact issue with regard to each of the four

---

[8] Because we conclude that the injury was not inherently undiscoverable, we need not consider whether it is objectively verifiable.  *Wagner*, 58 S.W.3d at 737.

elements. *KPMG Peat Marwick*, 988 S.W.2d at 748. We begin with the existence of the underlying tort.

COMMON LAW AND STATUTORY FRAUD

To establish common law fraud, Holland must demonstrate that: (1) Thompson made a material and false representation of fact; (2) Thompson made the representation knowing it to be false or made it recklessly as a positive assertion without any knowledge of its truth; (3) Thompson intended for Holland to act upon the representation; (4) Holland acted in reliance upon the representation and suffered injury as a result. *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 723 (Tex. 1990)*; Brush v. Reata Oil and Gas Corp.*, 984 S.W.2d 720, 726 (Tex.App.--Waco 1998, pet. denied). The elements of statutory fraud are essentially the same except that Holland was not required to prove evidence of knowledge or recklessness. TEX.BUS.&COMM.CODE ANN. § 27.01 (Vernon 2009).

An actionable representation is one concerning a material fact; a pure expression of opinion will not support an action for fraud. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983). An expression of opinion about monetary value is not a representation of fact which gives rise to an action for fraud. *See McCollum v. P/S Investments, Ltd.*, 764 S.W.2d 252, 254 (Tex.App.--Dallas 1988, writ denied); *Cravens v. Skinner*, 626 S.W.2d 173, 177 (Tex.App.--Fort Worth 1981, no writ); *Morris v. Leonard*, 441 S.W.2d 877, 881 (Tex.Civ.App.--Fort Worth 1969, writ ref'd n.r.e.), *cert. denied*, 402 U.S. 974, 91 S.Ct. 1667, 29 L.Ed.2d 139 (1971). Whether a statement is an actionable statement of "fact" or merely one of "opinion" often depends on the circumstances in which a statement is made. Among the relevant circumstances are the statement's specificity, the speaker's knowledge, the comparative levels of the speaker's and the listener's knowledge, and whether the statement relates to the present or the future. *See Trenholm*, 646 S.W.2d at 930; *Safety Cas. Co. v.*

*McGee*, 133 Tex. 233, 127 S.W.2d 176, 178 (1939); *Angelo Broadcasting, Inc. v. Satellite Music Network, Inc.*, 836 S.W.2d 726, 733 (Tex.App.--Dallas 1992, writ denied), *disapproved on other grounds by Hines v. Hash*, 843 S.W.2d 464, 469-70 (Tex. 1992). A statement of value may be actionable if the speaker knows it to be false. *Texas Indus. Trust, Inc. v. Lusk*, 312 S.W.2d 324, 326 (Tex.Civ.App.--San Antonio 1958, writ ref'd).

Holland contends that Thompson had special and superior knowledge when he made the offer. But the affidavits of Smith and Graham reveal that information concerning future drilling operations was readily available to Holland from the Commission records. The comparative levels of Thompson's and Holland's knowledge could not have been disproportionate because Holland had a duty to exercise reasonable diligence in valuing his own mineral interests.

Our analysis is guided by *Paull v. Capital Resources Managment, Inc.*, 987 S.W.2d 214, 218-19 (Tex.App.--Austin 1999, pet. denied). There, purchasers of an interest in an unsuccessful oil and gas water flood project alleged that they were defrauded because the seller assured them that the project had a very low level of risk and provided certain estimates about productivity, payout, and rate of return that did not materialize. The Austin Court of Appeals held that these statements were expressions of opinion and were not actionable, despite the seller's greater familiarity with the project and expertise as an engineer in evaluating water flood projects. *Id*. at 219. The court rejected the plaintiffs' contention that this information constituted "special knowledge" that would transform the expressions of opinion into actionable misrepresentations. *Id*. The court explained that the seller's greater expertise was not equivalent to "superior knowledge" for purposes of making an opinion actionable. *Id*. The data on which the seller based his opinions was publicly available; even though the purchaser "did not have the expertise to evaluate" that data "on his own," "[t]he fact remains . . . that he and [the seller] had equal access to the knowledge," and thus the statements were

not actionable misrepresentations as a matter of law. *Id.* at 220.

As in *Paull*, Holland cannot claim that Thompson had special knowledge. Holland's own expert reached his conclusions based on the Commission records that were equally available to both buyer and seller. Thompson also argues that even though the Commission records reflect an intent in 1997 to drill additional wells in the next year, that does not support the inference that his later statements to Holland in 1998 were false. We agree. Drilling did not begin until 2004--six years later--and circumstances had changed, including increased gas prices and improvements in drilling technology. Even if Thompson's statements regarding future production were material representations rather than non-actionable opinion, the evidence does not raise a genuine issue of material fact that the statements were false when made or that Thompson knowingly or recklessly made them.

## FRAUD BY NON-DISCLOSURE

Fraud by omission may occur: (1) when a defendant conceals or fails to disclose a material fact within his knowledge; (2) the defendant knows the plaintiff is ignorant of the fact and does not have an equal opportunity to discover the truth; (3) the defendant intends to induce the plaintiff to take some action by concealing or failing to disclose the fact; and (4) the plaintiff suffers injury as a result of acting without knowledge of the undisclosed fact. *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). Whether a duty exists is a question of law. *Id.* When a defendant has a duty to speak but remains silent, his silence is tantamount to a false representation. *American Tobacco Company, Inc. v. Grinnell*, 951 S.W.2d 420, 436 (Tex. 1997).

The failure to disclose information is not actionable unless there is a duty to speak. The duty arises in four circumstances: (1) a fiduciary or other special relationship between the parties gives rise to a duty to disclose; (2) new information makes a defendant's earlier representation misleading

or untrue; (3) a defendant conveys a false impression by making a partial disclosure; and (4) a defendant who voluntarily discloses information has a duty to disclose the whole truth. *Lesikar v. Rappeport,* 33 S.W.3d 282, 298-99 (Tex.App.--Texarkana 2000, pet. denied). Only the third and fourth scenarios are applicable here. Based on the facts as we have related them, Holland has established that Thompson had a duty to disclose. He related the details of the rapid depletion of the existing wells without disclosing significant undeveloped reserves and his statements to the Commission that he intended to drill fifteen wells in the Canyon. *BP America Production Co. v. Marshall*, 288 S.W.3d 430, 445-46 (Tex.App.--San Antonio 2008, pet. filed); *W.L. Lindemann Operating Co., Inc. v. Strange*, 256 S.W.3d 766, 776 (Tex.App.--Fort Worth 2008, pet. denied). But that does not end our analysis. While Holland may have been ignorant of the undeveloped reserves, he had an equal opportunity to discover the truth. The Commission records were available to him and as a royalty owner, he had a duty to protect his own interests. *HECI*, 982 S.W.2d at 886; *Wagner*, 58 S.W.3d at 732.

EQUITABLE CLAIMS

Constructive fraud is the breach of a legal or equitable duty which the law declares fraudulent because it violates a fiduciary or confidential relationship. *See Texas Integrated Conveyor Systems, Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 366 (Tex.App.--Dallas 2009, pet. denied). Inasmuch as Holland has abandoned his assertion that a fiduciary relationship existed, this claim must fail. Similarly, without a showing that the purchase of the mineral interest was somehow fraudulent or unjust, Holland's equitable claim for monies had and received likewise fails.

**CONCLUSION**

We conclude that since the record does not support the existence of an underlying tort, the doctrine of fraudulent concealment does not apply. The accrual of Holland's claims was not deferred

and the claims are barred by the statute of limitations.  We affirm the summary judgment on limitations grounds.

August 11, 2010

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.