

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00540-CV

Levi and Michelle **MCKENZIE**,
Appellants

v.

**COMMUNITY NATIONAL BANK**,
Appellee

From the 38th Judicial District Court, Medina County, Texas
Trial Court No. 13-05-21843-CV
The Honorable Camile G. Dubose, Judge Presiding

Opinion by:    Jason Pulliam, Justice

Sitting:    Marialyn Barnard, Justice
Patricia O. Alvarez, Justice
Jason Pulliam, Justice

Delivered and Filed:  June 10, 2015

AFFIRMED

Levi and Michelle McKenzie entered into a contract with J.H. Storey Construction Co., Inc. for the construction of a house.  The McKenzies obtained the interim construction financing from Community National Bank.  The McKenzies subsequently sued J.H. Storey for incomplete and defective construction.  After that lawsuit was settled and the McKenzies failed to repay the Bank, the Bank proceeded with foreclosure proceedings against the McKenzies.  The McKenzies filed suit to prevent the foreclosure and asserted claims against the Bank for negligence, breach of the duty of good faith and fair dealing, and fraudulent inducement.  The Bank filed traditional and

no-evidence motions for summary judgment which the trial court granted. On appeal, the McKenzies contend the trial court erred in granting summary judgment. We affirm the trial court's judgment.

## BACKGROUND

In March of 2011, the McKenzies entered into a Residential Construction Contract with J.H. Storey for the construction of a house. The contract price for the house was $169,900.00; however, the contract was later modified to add $10,000.00 in additional work.

The McKenzies, J.H. Storey, and the Bank entered into a Residential Construction Loan Agreement, whereby the Bank provided the interim financing for the construction. To obtain the financing, the McKenzies executed a disclosure statement and a Residential Construction Loan Borrower's Affidavit.

In the affidavit, the McKenzies acknowledged that the Bank was relying on the recitals contained in the affidavit. In one of those recitals, the McKenzies acknowledged that they had selected and investigated J.H. Storey's background, experience, and reputation and that the Bank would have no responsibility or liability for J.H. Storey or the quality of its materials or workmanship.

In the disclosure statement, the McKenzies acknowledged that any inspection by the Bank was for its own purposes and was not intended as a quality control inspection. Instead, the McKenzies were notified that quality control was a matter between them and J.H. Storey and that they should inspect the work or hire an independent investigator to review the work in progress. The McKenzies were also notified that they were responsible for monitoring the construction draws. This notice is consistent with the loan agreement which provided: (1) any inspection by the Bank would be for its own benefit and the bank had no obligation to monitor or control the

construction; and (2) the Bank had no obligation to verify that advances made on the loan were actually used to pay for labor or materials used in the construction of the house.

As previously noted, J.H. Storey failed to complete the construction and some of the work performed by J.H. Storey was defective. In the petition the McKenzies filed in the underlying lawsuit, they alleged the Bank failed to monitor the construction and confirm that J.H. Storey's work was completed before funding draws. The McKenzies also alleged an employee of the Bank made positive assurances regarding J.H. Storey's business acumen but failed to disclose that J.H. Storey had defaulted on prior loans from the Bank. Based on these allegations, the McKenzies asserted claims for negligence, breach of the duty of good faith and fair dealing, and fraudulent inducement. As previously noted, the trial court granted summary judgment as to all of the McKenzie's claims.

### STANDARD OF REVIEW

We review a trial court's decision to grant no evidence and traditional motions for summary judgment de novo. *Valance Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Strandberg v. Spectrum Office Bldg.*, 293 S.W.3d 736, 738 (Tex. App.—San Antonio 2009, no pet.). "Whether reviewing a traditional or a no-evidence summary judgment, we accept the non-movant's evidence as true and 'indulge every reasonable inference and resolve any doubts in the non-movant's favor.'" *Strandberg*, 203 S.W.3d at 738 (quoting *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004)). A traditional summary judgment may be granted when the summary judgment evidence shows "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." TEX. R. CIV. P. 166a(c).

A movant is entitled to a no-evidence summary judgment if, "[a]fter adequate time for discovery, ... there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." TEX. R. CIV. P. 166a(i). The trial court

"must grant" the no-evidence motion unless the non-movant "produces summary judgment evidence raising a genuine issue of material fact" on the elements challenged by the movant. *Id*. "A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). "More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (internal citations omitted). "Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact." *Id*.

### DUTY TO DISCLOSE

In both its traditional and no-evidence motions for summary judgment, the Bank challenged the existence of any duty it owed to the McKenzies, which was an element of the McKenzies' negligence and fraudulent inducement claims. *See Nabors Drilling U.S.A., Inc. v. Escolo*, 288 S.W.3d 401, 404 (Tex. 2009) (listing existence of a legal duty as one element of a negligence claim); *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001) (noting duty to disclose must exist in order for failure to disclose information to constitute fraud). In response, the McKenzies asserted the Bank had a duty to disclose that J.H. Storey had previously defaulted on two loans from the Bank based on statements its employee made regarding J.H. Storey's reputation.[1] In support of this assertion, the McKenzies relied on Levi McKenzie's testimony that a Bank employee informed him that J.H. Storey "was a good builder," the Bank had worked with J.H. Storey on several houses, and "they were nice houses." The McKenzies contend these

---

[1] One of the loans was made in 2007 to cover a $23,000 overdraft created when another contractor failed to pay J.H. Storey. Similarly, the other loan for $10,500 was advanced in 2008 because J.H. Storey was "waiting for funds from [another] contractor." When the loans were combined and renewed in 2011, the balance remaining was $16,000.

statements left them with a false impression of J.H. Storey giving rise to the duty to disclose the prior loan defaults.

"As a general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose the information."[2] *Bradford*, 48 S.W.3d at 755-56. "Whether such a duty exists is a question of law."[3] *Id.*; *see also Nabors Drilling U.S.A., Inc.*, 288 S.W.3d at 404 (noting existence of duty to support negligence claim is a question of law).

This court is among the "[s]everal courts of appeals [that] have held that a general duty to disclose information may arise in an arm's-length business transaction when a party makes a partial disclosure that, although true, conveys a false impression." *Bradford*, 48 S.W.3d at 755-56 (citing *Ralston Purina Co. v. McKendrick*, 850 S.W.2d 629, 636 (Tex. App.—San Antonio 1993, writ denied), but noting Texas Supreme Court has never adopted such a general duty); *but see Bazan v. Munoz*, 444 S.W.3d 110, 117-18 (Tex. App.—San Antonio 2014, no pet.) (noting "[g]enerally, no duty of disclosure arises without evidence of a confidential or fiduciary relationship"). In this case, the McKenzies argue the Bank employee's statements about J.H. Storey being a good builder left them with a false impression because J.H. Storey had prior loan defaults. The McKenzies fail to explain, however, how the prior loan defaults affected the quality of J.H. Storey's construction activities, and we do not see any connection between the two. Because the statements regarding J.H. Storey's construction reputation conveys no impression regarding J.H. Storey's reputation for repaying loans, the statements did not give rise to a duty to disclose.

---

[2] In its brief, the Bank questions whether this duty to disclose also gives rise to a negligence claim because the cases cited by the McKenzies in support of such a duty address fraud claims. We will assume for purposes of this opinion that such a duty would give rise to a negligence claim; however, this opinion should not be read as holding a negligence claim arises in this context.

[3] Because the existence of a legal duty is a question of law, we question whether the Bank's no-evidence motion was an appropriate method for challenging this element of the McKenzies' claims.

In their brief, the McKenzies also contend a duty to disclose exists because the Bank's voluntary disclosure of some information gave rise to a duty to disclose the whole truth. The Texas Supreme Court case cited by the McKenzies, however, does not support the existence of such a duty because in that case the court discussed the duty to disclose when a confidential or fiduciary relationship exists. *See Ins. Co. v. North Am. v. Morris*, 981 S.W.2d 667, 674-75 (Tex. 1998). Similarly, in *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Cos.*, 217 S.W.3d 653, 670-71 (Tex. App.—Houston [14th Dist.] 2006, pet. denied), the Houston court discussed the duty to disclose when new information makes an earlier representation misleading or untrue.

The only case cited by the McKenzies that discusses a duty to disclose the whole truth based on a voluntary disclosure of information is *Holland v. Thompson*, 338 S.W.3d 586 (Tex. App.—El Paso 2010, pet. denied). In that case, the court discussed the duty to disclose in the context of a sale of a mineral interest to the operator of an oil and gas lease. *Id*. at 589-90. The information voluntarily disclosed related to the rapid depletion of existing wells on the land, while the undisclosed information related to the existence of significant undeveloped reserves and the operator's intention to drill additional wells. *Id*. at 598. Thus, the disclosed and undisclosed information both related to the value of the mineral interest.

Even if we accept a duty to disclose the whole truth arises when information relating to a particular topic is voluntarily disclosed, the "whole truth" must relate to the same topic about which the information was voluntarily disclosed. For example, in this case, by voluntarily disclosing information regarding J.H. Storey's reputation relating to its construction activities, the Bank employee might have a duty to disclose the "whole truth" as to that reputation. This duty would not, however, extend to the unrelated topic of J.H. Storey's reputation for repaying its loans.

Based on the foregoing, we hold the Bank did not have a duty to disclose any information regarding J.H. Storey's prior loan defaults based on its employee's statements regarding J.H.

Storey's building reputation. Because we affirm the summary judgment on the McKenzies' negligence and fraudulent inducement claims on this basis, we need not discuss whether the Bank employee's statements were actionable statements of fact as opposed to mere opinions. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337-38 (Tex. 2011) (noting pure expressions of opinion cannot provide a basis for a fraud claim).

## DUTY OF GOOD FAITH AND FAIR DEALING

In both its traditional and no-evidence motions for summary judgment, the Bank challenged whether it owed the McKenzies a duty of good faith and fair dealing. In response, the McKenzies asserted the Bank owed them a duty of good faith and fair dealing because a special relationship existed based on the imbalance in the parties' bargaining power. The McKenzies contend the Bank took advantage of their inferior bargaining position by failing to explain the terms of the loan agreement, especially the requirement that the McKenzies were responsible for inspecting the construction work and monitoring the draw requests.

A duty of good faith and fair dealing does not arise in ordinary commercial transactions, such as an ordinary, arms-length lender-borrower relationship. *Formosa Plastics Corp., USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 51-52 (Tex. 1998); *Villanova v. Fed. Deposit Ins. Corp.*, No. 08-11-00361-CV, 2014 WL 2881540, at *12 (Tex. App.—El Paso June 25, 2014, no pet.); *Godfrey v. Security Serv. Fed. Credit Union*, 356 S.W.3d 720, 726-27 (Tex. App.—El Paso 2011, no pet.); *South Plains Switching, Ltd. Co. v. BNSF Ry. Co.*, 255 S.W.3d 690, 702-03 (Tex. App.—Amarillo 2008, pet. denied). The duty may, however, arise when a contract creates or governs a special relationship between the parties. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225 (Tex. 2002). "[W]hen a special relationship between a borrower and lender has been found, it has rested on extraneous facts and conduct, such as excessive lender control over, or influence in, the borrower's business activities." *Villanova*, 2014

WL 2881540, at *12; *see also Bank One, Tex., N.A. v. Stewart*, 967 S.W.2d 419, 442 (Tex. App.— Houston [14th Dist.] 1998, pet. denied). In this case, the construction loan did not involve a business, and the McKenzies also have produced no evidence demonstrating the Bank had control over or influence in the McKenzies' activities.

With regard to the McKenzies' reliance on the parties' unequal bargaining power to give rise to a special relationship, this court has stated, "A 'special relationship' has been recognized where there is unequal bargaining power between the parties and a risk exists that one of the parties may take advantage of the other based upon the imbalance of power." *Laredo Medical Group v. Lightner*, 153 S.W.3d 70, 72-73 (Tex. App.—San Antonio 2004, pet. denied). As support for this statement, this court cited *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, in which the Texas Supreme Court held a duty of good faith and fair dealing exists between insurance companies and insureds because the insurance companies have "exclusive control over the evaluation, processing and denial of claims" and could "arbitrarily deny coverage and delay payment of a claim" with no great penalty. 725 S.W.2d 165, 167 (Tex. 1987). The McKenzies have not presented any evidence of a similar risk in an arms-length loan transaction between a lender and borrower. Accordingly, we reject the McKenzies' contention that a special relationship arose based on the parties' unequal bargaining power. *See also In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 232-33 (Tex. 2008) (noting disparity in bargaining power commonly occurs only when one party has no choice but to accept an agreement).

## CONCLUSION

Having concluded the trial court properly granted summary judgment as to each of the McKenzies' claims, the trial court's judgment is affirmed.

Jason Pulliam, Justice